## Douglas *v.* Bank.

### (*Jackson.* June 30, 1896.)

1. ASSIGNMENTS, GENERAL. *Registration of foreign, essential.*

    A foreign general assignment conveying personalty situated in this State is not effectual, without registration in this State, against subsequent attachments of such personalty by the assignor's creditors. Registration laws prevail over rules of comity. (*Post, pp. 138–141.*)

    Code construed: §§ 3664, 3697, 3706, 3752, (S.); §§ 2809, 2837, 2844, 2890 (M. & V.); §§ 2003, 2030, 2033, 2075 (T. & S.).

    Case cited and approved: Lookout Bank *v.* Noe, 86 Tenn., 29.

2. ATTACHMENT. *Of nonresident's property by a nonresident.*

    A nonresident creditor may attack his nonresident debtor's general assignment for want of registration in this State, and, by attachment of the property embraced therein which is situated in this State, obtain priority over the assignment. (*Post, pp. 137–141.*)

3. BILLS AND NOTES. *Conflict of laws as to demand and protest.*

    The statute of another State, in which a draft is drawn, accepted, and made payable, dispensing, in certain cases, with demand or notice as a condition of holding the drawer or indorser, does not apply to an indorsement of such draft made in this State. The indorsement is a new contract and is controlled by the law of the State where made. (*Post, pp. 141–143.*)

    Cases cited and approved: Trabue *v.* Short, 5 Cold., 293; Green *v.* Bond, 5 Sneed, 328.

4. SAME. *Suit for amount paid for drafts.*

    A creditor who has been induced by fraud or misrepresentation to discount a draft or receive it in payment of a matured debt, may abandon or rescind the transaction and recover upon the original consideration, without waiting for the draft to mature. (*Post, pp. 143–145, 146.*)

Douglas *v.* Bank.

5. SAME. *Same.*

> A creditor who accepts drafts in payment of his debt, cannot afterwards recover upon the original consideration or maintain attachment upon the drafts, on the ground of the debtor's nonresidence, until they have matured. (*Post, pp. 146, 147.*)

6. NOTARY PUBLIC. *Certificate of, construed.*

> A certificate of a notary public that he did "present the original note, hereto annexed, to the [bank at which the same was payable] and demand payment, who refused to pay the same," shows a good and legal demand, notwithstanding that it fails to show that the demand was made of any individual. (*Post, pp. 143–145.*)

> Cases cited and approved: Worley *v.* Waldran, 3 Sneed, 548; Gardner *v.* Bank, 1 Swan, 423; State *v.* Napier, 6 Hum., 270; 6 How., 69.

7. SAME. *Certificates of foreign.*

> The certificates of notaries public of other States and countries, made under their official seal, of facts they are authorized by law to certify, are admissible in evidence in the Courts of this State, and constitute *prima facie* evidence of the facts therein stated. (*Post, pp. 144, 145, 148–150.*)

> Code construed: §§ 3203, 3204 (S.); §§ 2470, 2471 (M. & V.); §§ 1799, 1800 (T. & S.).

> Case cited and approved: Rosson *v.* Carroll, 90 Tenn., 120.

8. ATTORNEYS' FEES. *Paid out of general fund.*

> Attorneys for the assignee in a foreign assignment for creditors, which is invalid as to personalty within this State because not registered as required by the Tennessee statute, are entitled to reasonable solicitors' fees out of the property for services rendered the assignee in an unsuccessful attempt to maintain assignment against attaching creditors. (*Post, pp. 147, 148.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County, JOHN L. T. SNEED, Ch.

Douglas *v.* Bank.

TURLEY & WRIGHT, MORGAN & McFARLAND, and ESTES & FENTRESS for Complainant.

SMITH & TREZEVANT, D. E. MYERS, J. W. CUTRER, and W. A. PERCY for Defendant.

GEO. GILLHAM, Sp. J.   On July 3, 1893, John Streight, a resident of Hamilton County, State of Ohio, made a general assignment of all his property situated in that State and elsewhere, to the complainant, Howard Douglas, as assignee, for benefit of all his creditors, without preference, which was on that day executed and registered in that county. The conveyance, in form and execution, was in compliance with the laws of that State, as was its registration.   Streight was a lumber dealer and mill man, and then owned and operated, at Memphis, Tennessee, an extensive sawmill plant, and carried on a lumber business.   To this assignment there were no schedules attached, as is required by our general assignment law of 1881, nor was it verified by the oath required by that Act, nor was it ever registered in this State.

Shortly after the assignment was made (the earliest being on the same day, July 3, 1893), various of his creditors, some of whom were residents of this State, others nonresidents, sued out attachments against him, as a nonresident of the State, and had the same levied on his property in Shelby County.

On the day the assignment was made, the

assignee, Douglas, accepted the trust, and duly qualified under the laws of Ohio, and by wire directed his agent at Memphis to take possession of all the property there, which he did on that day, and before the attachments were levied. The attachments so · levied are upon claims against John Streight, aggregating about $39,000. And the claims · involved herein against him, upon which no attachments were issued, amount to about. $36,000.

On the ninth day of August, 1893, Howard · Douglas, as assignee of John Streight, filed in the Chancery Court of Shelby County, his bill against all the attaching creditors, the officers who had made the levies, and others, claiming that, by the assignment to him in Ohio, he was vested with the title to all the property so attached; that he was in possession of the same when attached, and was entitled to be restored to its possession; that the conveyance was good and valid under the law of Ohio, where made, and where the grantor was domiciled, and that, being valid there, it was likewise valid everywhere. The prosecution of the attachment suits were enjoined, and the whole litigation brought into this cause. Later, a receiver was appointed by the Court, who sold the property so attached, and has realized a fund, now on hand, of about $36,000.

The Chancellor, on demurrer to the bill of Douglas, assignee, held the Ohio assignment invalid, as against the attaching creditor, because not registered in this State, and, on final hearing, directed the

fund to be distributed to the attaching creditors so far as necessary to satisfy the same, and, in the order of the levies of their respective attachments, the balance to the general creditors.     From this decree, the assignee and some of the creditors have appealed, and assigned appropriate errors.     Conflicts also arose between the assignee and various of the attaching creditors, and between the creditors, over the validity of their claims and attachments.

The matter here in controversy, raised by the appeals and assingments of error, are:

1.  The validity of the Ohio assignment.

2.  The sufficiency of the levies of the attachments.

3.  The right of the Vicksburg Bank (a nonresident of Tennessee) to raise the question of the invalidity of the Ohio assignment.

4.  Validity of the claim of the American National Bank upon the Wells acceptance for $2,360.35.

5.  Validity of the attachment of the Bank of Commerce on the draft for $820, as not being due when the attachment was issued.

6.  Validity of the claim of the Bank of Commerce on the VosNaac, Lee & Co. note for $1,160, for alleged want of proper demand for payment, and for evidence of presentment for payment.

7.  Validity of the attachments of the Coldwater Logging Co. on the drafts claimed not to have been due when the attachment issued, aggregating $4,872.55.

8.  Validity of the claim and attachment of the Coldwater Logging Co. on the Herron-Taylor draft

for $3,557.95, less $1,225, for alleged want of no-tice of dishonor to John Streight.

9. Validity of the attachments of E. C. Atkins & Co. on bills not due when attachment was sued out, amounting to $1,003.15.

10. Validity of the attachment of John Oberly on bills not due when his attachment was issued, amounting to $752.07.

11. Right of solicitors for Howard Douglas, as-signee, to a fee out of the fund for services to him as assignee herein, as against the successful attaching creditors.

The first assignment involves the validity of a for-eign general assignment of personalty, situated in this jurisdiction, when there had been no registration of the conveyance in this State, as against attaching creditors of the assignor. For the complainant it is, with great. force and earnestness, urged upon us that, under the comity existing between the Courts of the several States and of the States of this Government, it is our duty to uphold a conveyance of personalty, made in conformity with the law of the domicile of the owner, although the property be actually situ-ated in this State.

The defendants, whilst admitting generally the doc-trine founded upon comity contended for, insist that the law of the domicile of the owner cannot over-come such registration and other positive laws of the State where the property is situated, and are distinctively politic and coercive.

Sec. 2809, M. & V. Code, provides: "All mortgages and trusts of personalty shall be in writing, and proven and registered as hereinafter provided, to be valid against the creditors of the bargainor, or purchasers under him for value, and without notice."

Sec. 2837, M. & V. Code, under title, "What Shall be Registered," says, Subsec. 5: "All instruments of writing for the absolute conveyance of personal property." Subsec. 8: "All mortgages and deeds of trust of either real or personal property." Subsec. 12: "All other deeds of every description."

Under title of "Place of Registration," § 2844, M. & V. Code, provides: "All deeds, bills of sale, agreements, and other instruments for the conveyance or mortgage of personal property, shall be registered in the county where the vendor or person executing the same resides, and, in case of his non-residence, where the property is. And, under the title, "Effect of Registration," § 2890, M. & V. Code, says: "Any of said instruments, not so proven or acknowledged and registered or noted for registration, shall be null and void as to existing or subsequent creditors of, or *bona fide* purchasers from, the makers without notice."

Do these statutes apply to such foreign assignments, and require registration to make them valid against attaching creditors in this forum, is the question; for, if to be valid they must be registered, the complainants must fail, but if not, then, under the principle of comity established by general law, the

Ohio assignment must be upheld. This Court has
decided, that to be effectual against creditors, a gen-
eral assignment made in this State, under Act of
1881, must be registered. *Lookout Bank* v. *Noe*, 2
Pick., 29.

If an assignment made in this State is within
our registration laws, it would seem logically to
follow that one made in another State must also be
registered, to be good against creditors. However,
the exact question was before this Court at Jackson
in 1887, in the case of the *German Bank* v. *Coch-
ran, Lyman & Co.*, decided by an oral opinion.
There the assignor was domiciled in Hamilton
County, Ohio, and made a general assignment under
the Ohio law, conveying (with other property) some
personal property in Shelby County, Tennessee. It
was not registered in this State, and some of the
assignor's creditors attached the property in Shelby
County, on the ground of nonresidence of the
assignors. The trustee intervened and filed his an-
swer and cross bill, setting up the Ohio assignment
and claiming under it. The creditors demurred to
his cross bill, the main ground of demurrer being
that the Ohio assignment was void as against them,
for want of registration in this State. The Chan-
cellor sustained the demurrer, and upon appeal to
this Court, the decree was affirmed.

The settled policy of this State is, that both do-
mestic and foreign assignments conveying personalty
situated in this State, to be valid against creditors,

must be registered. We are, therefore, of opinion that no rule of comity should control as against our registry laws; that the doctrine of comity does not affect registration laws, and that for want of registration this assignment is invalid as against the creditors who, in this cause, have attached the property of the assignor and fixed liens upon the same.

2. That the several levies, whilst somewhat irregular, yet are sufficient.

3. That the Vicksburg bank, although a nonresident of this State, is entitled to invoke the Tennessee law as against this assignment.

4. We think that the claim of the American National Bank on the Wells draft for $2,360.35, made by John Streight at Chicago, Ill., on R. A. Wells at the same place, and by him accepted, payable at his office in Chicago, and afterwards indorsed and negotiated by the drawer to the American National Bank at Nashville, Tenn., should not have been allowed. It is conceded that no demand for payment, or notice of dishonor, was given to the drawer, Streight. We find the fact to be that the indorsement by Streight to the American National Bank was made in Tennessee. The Illinois law provides that the assignor of such paper is liable to the holder without demand or notice—first, where the holder has pursued the maker to insolvency, and, second, where suit against him would have been unavailing. It is clearly proven that both the maker (Streight) and

the acceptor (Wells) were insolvent when the paper matured, on July 28, 1893, and that suit against either, or both, would have availed nothing. We think the Illinois statute does not apply, and for the reason that the assignment or indorsement of the paper was made in Tennessee, and not in Illinois; that the indorsement in Tennessee was a new and independent contract, and, having been made in Tennessee, the law of this State controls. *Trabue, Davis & Co.* v. *Short*, 5 Cold., 293; *Green* v. *Bond*, 5 Sneed, 328; Daniel on Neg. Insts., Secs. 898, 899, 902, 905, 907, 910.

To hold the drawer or indorser, our law requires in such case proper demand and notice; and without more it is clear that no recovery can be had.

It is, however, further claimed that the paper was accommodation paper; that Streight had no funds in the hands of the acceptor, and had no reason to believe that he would pay it; that Streight was primarily liable, and therefore not entitled to demand and notice; but this contention, we think, is not sustained by the proof, which is, that Streight and Wells each accepted about $10,000 of such paper, of which this is part, and that each was to take up and pay that which he accepted. We do not think this is a case of an accommodation acceptance, within the rule invoked.

Exception to this claim, on the part of the assignee and others, was by the Chancellor disallowed, and the same was decreed to be paid, as a part of

the claim of the American National Bank. We think this was error, and that the decree as to this item should be modified.

5. Bank of Commerce claim on draft for $820:

"$820.        MEMPHIS, TENN., July 3, 1893.

"At sight pay to the order of the Bank of Commerce eight hundred and twenty dollars, account payroll, value received, and charge to account of

"JOHN F. BENNETT, *Manager.*"

"JOHN STREIGHT,

"Cincinnati, Ohio."

This draft was discounted by the Bank of Commerce on July 3, 1893, the day the assignment was made. The attachment upon it was issued the next day, July 4, and, of course, before it could be presented for payment at Cincinnati, Ohio. The bank's contention is that they took the draft as cash, not knowing at the time that an assignment had been made, or would be that day made; that it was a fraud upon the bank to so obtain its money, and that for these reasons it became at once due. The Chancellor disallowed the claim, because the suit and attachment were brought before maturity of the debt. We think, upon the facts proven, that the claim should be treated as due at the time of the attachment; that the same was not prematurely brought; and that the Chancellor's decree should, in this particular, be modified.

6. Claim of the Bank of Commerce on the Vos-Naac, Lee & Co. note for $1,160:

"$1,160.            NEW YORK, March 4, 1893.

"July 8 after date, we promise to pay to the order of John Streight eleven hundred and sixty and $\frac{00}{100}$ dollars, at Fourteenth Street Bank. Value received.                    VOSNAAC, LEE & Co."

Indorsed: "JOHN STREIGHT."

This note matured July 11, 1893, and was on that day protested in New York, and on July 14, 1893, the bank filed a second bill in the Chancery Court and obtained attachments on this and other claims. Exceptions were taken to this claim by the American National Bank, Douglas, assignee, *et al.*, on the ground that there was no evidence that legal demand had been made or notice of dishonor given to the indorser, John Streight. The certificate of the New York notary certifies that he "did present the original note, hereto annexed, to the Fourteenth Street Bank, and demanded payment, who refused to pay the same." He fails to certify that he sent out notices of protest, but it is proved that on the fourteenth day of July, 1893, the Bank of Commerce received from the notary proper notices of dishonor, one of which it mailed on the same day to John Streight, at Cincinnati, Ohio. The Chancellor disallowed the claim, from which decree the bank appeals. We think that the demand, having been made at the Fourteenth Street Bank, where it was on its face made payable, was a good and legal demand, notwithstanding the fact that the notary fails to certify that he made it of some person, the teller, or some such

party. 1 Dan. on Neg. Insts., Sec. 955; *Wormly* v. *Waldron*, 3 Sneed, 548; *Gardner* v. *Bank of Tennessee*, 1 Swan, 423; *Bank* v. *Napier*, 6 Hum., 270; 1 Dan. on Neg. Insts., Sec. 656; 3 Randolph on Com. Paper, Sec., 1134; *Hildeburn* v. *Turver*, 6 How., 69.

It is further earnestly contended that as this was on an inland bill the certificate of the notary is not competent evidence, as here offered, and that there is no proof of a demand having been made. We think that the certificate is proof of the demand and dishonor. Courts admit such certificates as *prima facie* evidence. 2 Dan. on Neg. Insts., Sec. 945. Notice given by any party to the bill is sufficient. 2 Dan. on Neg. Insts., Secs. 986, 991. We think it was error in the Chancellor to disallow this claim, and that in this respect the decree will also be modified.

7. Claim of Coldwater Logging Company on the drafts not due at date of the attachments, aggregating about $4,872.55, composed of three items, drafts for $3,757.95, $902.30, and $212.30.

These claims were excepted to by the American National Bank *et al.* The Chancellor quashed the attachments as to these items and dismissed the bills, on the assumption that the debts were not due when the attachments were issued, and, further, for the reason that no demand or notice of dishonor had been given to the drawer, Streight. From this decree the Coldwater Logging Company has appealed and assigned errors.

The main contention of the company is that, under the contract, the paper was to be bankable; that it proved not to be such, and that the company could, in this respect, rescind the contract, and, of right, treat the debt as due at the time the attachment suits were brought.  Upon a full and careful consideration of the law and the facts, we have reached the conclusion that the paper given and accepted was not such as was contemplated by the contract, and that the company had a right to sue upon the original consideration and to treat it as due at the time the attachments were sued out.  The decree in this regard, also, is incorrect, and will be modified.

8. Claim of the Coldwater Logging Company on draft for $3,557.95, less a credit of $1,225. This is the Herron-Taylor draft.  It was past due when the attachment was filed and was, by the Chancellor, allowed.  Exceptions to its allowance were filed by the American National Bank, which bank has appealed from the allowance of this sum and has assigned errors.  The paper was protested at Vicksburg and notice sent to State National Bank, Memphis.

The main contention is that the drawer, Streight, is not shown to have received proper and legal notice of dishonor of the draft.  We think that he waived this, and that the decree is correct and should be affirmed.

9. The claim of E. C. Atkins & Co. on attachments for drafts not due, amounting to $1,003.15.

E. C. Atkins had a running account against Streight, and took the drafts in question and credited them on the general account. One witness, N. A. Gladding, says that the drafts were not taken in absolute payment of the account, but the original bill was filed upon the drafts, and was sworn to by the same party, Gladding. By amended bill it is sought to change their ground, and to recover on the original indebtedness. We think that the acceptance, and the crediting of such bills on the account, under the circumstances here proven, suspended all right of action until they matured. 2 Dan. on Neg. Insts., Sec. 1272. The Chancellor's decree, in this respect, is correct, and is affirmed.

10. Claim of John Oberly on drafts aggregating $752.07, and an open account for $117.58.

The Chancellor held that the account for $117.58 was due when the attachment of Oberly was issued, and sustained it for that amount, but disallowed the claim on the drafts for $347.03, $272.92, and $132.12, because the same were not due when the suit was instituted. This, we think, both as to the allowance and disallowance, was correct, and the Chancellor's decree in this respect is affirmed.

11. The decree orders a reference to fix the fees of Messrs. Turley & Wright, for services rendered to the assignee in this cause down to the time the receiver was appointed.

This is excepted to by the American National Bank *et al.*, and errors assigned upon it. We think

it was the duty of the assignee to make this contest, and to try to sustain the assignment; and, upon the same principle, that an executor who, in good faith, defends, when contested, the validity of the will, is allowed reasonable solicitor's fees out of the estate, although the will be not established, the fees should in this case be ascertained and allowed, to be paid ratably by the attaching creditors in proportion to the sums realized by each herein. The decree in this respect is affirmed. The decree will be modified as herein indicated, otherwise affirmed.

. The costs of the appeal will be paid out of the fund, and the case remanded for further appropriate proceedings. Judge Beard, being disqualified, did not sit in this case.

---

### OPINION ON PETITION FOR REHEARING.

A petition for rehearing has been filed by the American National Bank, asking us to reconsider our former ruling as to the sixth assignment, involving the VosNaac, Lee & Co. note and its allowance to the Bank of Commerce. This we have carefully considered. The point made and relied upon . in the petition is that the certificate of the notary in New York is not evidence of demand having been made; that it is not admissible in evidence to prove such fact.

M. & V. Code, § 2470, provides: "The attestations, protestations, and other instruments of publi-

cation, made or done by any notary public under his seal, shall be received in evidence.''

And § 2471 says: '' In an action against the drawer or indorser of a bill of exchange, or any negotiable paper protested for nonacceptance or nonpayment, the notary's certificate, either in or on the protest, that he gave notice of the dishonor of the paper by the drawer or indorser, shall be *prima facie* evidence of the fact of such notice.''

That such certificate of a Tennessee notary is admissible is well settled. *Rosson* v. *Carroll,* 6 Pickle, 120, and cases there cited. But it is contended that the statute includes only notaries of this State, and does not apply to the certificates of such officers of other States or countries.

It is said that this precise question has never been decided by this Court. By the Act of 1835, Ch. 11, Sec. 5, it was provided: '' The attestation, protestation, and other instruments of publication of the several notaries public of this State shall and may be received in evidence in any Court of record, or before any Justice of the Peace in this State.''

It will be noticed that this statute refers only to certificates of notaries of this State. But in the Code of 1858 the compilers changed this Act to read: ''The attestation, protestation, and other instruments of publication made or done by any notary public under his seal, shall be received in evidence.'' Sec. 1799.

Section 1800 of that Code reads: '' In an action

against the drawer or indorser of a bill of exchange or any negotiable paper protested for nonacceptance or nonpayment, the notary's certificate, either in or on the protest, · that he gave notice of the dishonor of the paper by the drawer or indorser, shall be *prima facie* evidence of the fact of such notice."

These sections have been carried into our Code of 1884 as §§ 2470 and 2471, without change. It will thus be seen that the compilers of the Code of 1858 changed the phraseology of § 1799 by omitting the words, "the several notaries of this State."

The manifest intention was to make the section apply to the certificates of all notaries who act over their official seals, whether acting under the authority of this or any other State or country. Such, we think, has been the ·understanding of the profession, and of the commercial classes of the State, ever since the adoption by the Legislature of the Code of 1858. We therefore think, both. upon the authorities cited in the original opinion and upon a review of our statutes, that the certificate of a foreign notary, when offered in evidence in our Courts, is *prima facie* evidence, when it so recites, of demand for payment and dishonor of the paper.

The petition for rehearing is therefore dismissed, at cost of American National Bank.