RODE & HORN v. PHIPPS et al.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1912.)

No. 2,164.

1. BANKRUPTCY (§ 461*)—APPEAL—TIME FOR TAKING.

The right of appeal under Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), once lost by a failure to appeal within the ten days allowed, cannot be revived by a petition for a rehearing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 920–923; Dec. Dig. § 461.*]

2. BANKRUPTCY (§ 455*)—APPEAL—CONTROVERSY ARISING IN BANKRUPTCY PROCEEDING.

A hearing in a bankruptcy court on a petition by an adverse claimant who asserts delivery by the bankrupt to him, coupled with possession, of property included in the bankrupt's schedules, as to part of which property claimant alleges ownership, and as to all of which he claims right of possession, is a controversy arising in a bankruptcy proceeding; and the fact that the petition also sets up the claim of the petitioner as

---

a creditor, as dependent on the determination of his claim to the property, and raises questions of priority between him and other creditors, does not deprive him of the right to appeal from an adverse decision on his claim of ownership under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 916; Dec. Dig. § 455.*]

**3. BANKRUPTCY (§ 449*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.**

A final order of a court of bankruptcy on the intervening petition of an adverse claimant of property, not distinctly brought on either the law or equity side of the court, may be reviewed under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431), by appeal, even though the questions at issue are such as can be considered in a court of law. When review is desired only on one or more legal questions arising under such proceeding in intervention, writ of error is appropriate for the purpose. On appeal, the review may extend to questions of fact, while on writ of error only questions of law can be considered.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 449.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

**4. CHATTEL MORTGAGES (§ 26*)—VALIDITY—PROVISIONS PERMITTING OTHER INCUMBRANCES.**

A chattel mortgage on lumber which the mortgagor was under contract to sell to third parties was not invalidated by provisions permitting the mortgagor to incumber the same to the purchasers for a stated sum per thousand feet as a first lien for actual advances thereon, and permitting him to ship the same to the purchasers on depositing a certain sum per thousand for the benefit of the mortgagee.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 72, 73; Dec. Dig. § 26.*]

**5. BANKRUPTCY (§ 188*)—LIENS—RIGHTS OF TRUSTEE.**

An adjudication in bankruptcy does not operate as a seizure in favor of general creditors as against lienholders, but the trustee takes the property subject to whatever liens existed as against the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286-295; Dec. Dig. § 188.*]

**6. BANKRUPTCY (§ 188*)—LIENS—UNRECORDED CHATTEL MORTGAGE.**

Under Shannon's Code Tenn. § 3664, which provides that all chattel mortgages shall be registered "to be valid against the creditors of the bargainor or purchasers under him for value and without notice," construed in conformity to the decisions of the Supreme Court of the state relating to statutes affecting real estate mortgages, a contract giving a lien on personalty, made in good faith, for value, and good as against the mortgagor, although not registered, is valid as against his general creditors in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286-295; Dec. Dig. § 188.*]

**7. BANKRUPTCY (§ 172*)—CHATTEL MORTGAGES (§ 225*)—ADVERSE CLAIMANT TO PROPERTY—RIGHTS AS AGAINST CREDITORS AND MORTGAGEE.**

A bankrupt had given a mortgage on timber and the lumber to be cut therefrom, which he had previously contracted to sell. The mortgage provided that the mortgagor might give a first lien on the lumber to the purchasers to the amount of $7.50 per thousand for advances made under the contract, and that he might ship the same to them on depositing $2 per thousand for the mortgagee's benefit. Prior to the bankruptcy, the purchasers paid in full for the lumber, and it was delivered to them, and some, but not all, shipped, but the bankrupt did not make the required deposit for the mortgagee. *Held*, that the title of the purchasers

was good as against the general creditors of the bankrupt and also as against the mortgagee, except to the extent of the $2 per thousand which they were required to pay, having knowledge of the mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. § 172;* Chattel Mortgages, Cent. Dig. §§ 469, 470; Dec. Dig. § 225.*]

In Error to the District Court of the United States for the Eastern District of Tennessee.

In the matter of J. Gaines Phipps, bankrupt. From an order of the District Court, deciding certain matters in favor of Sam L. King and M. W. Dickey, trustee, Rode & Horn bring error. Reversed in part.

Isaac Harr (Harr & Burrow, on the brief), for plaintiffs in error. C. J. St. John, for defendants in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. Phipps was adjudicated bankrupt on his voluntary petition June 24, 1910. May 26, 1909, Rode & Horn had contracted with Phipps for the purchase from the latter of 1,000,-000 feet of lumber, to be cut by the latter and piled by him at Hampton or Plato, Tenn., on land leased by Phipps to Rode & Horn for the purpose. Rode & Horn agreed to advance $7.50 per thousand feet on all lumber when so piled at the places named, and to ship all lumber as soon as delivered by Phipps to the railroad, completing payment therefor within 20 days from invoice, less a deduction of 2 per cent. Phipps further agreed "to secure the $7.50 paid by mortgage on the lumber." This contract was not recorded under the statutes of Tennessee relating to chattel mortgages and liens. July 31, 1909, Phipps mortgaged to King certain timber and lumber to be cut therefrom (including the lumber to be cut for Rode & Horn) for $6,000, one half that amount being for money advanced, the other half for indorsements to be made by King for Phipps. This mortgage was duly filed and recorded. The mortgage expressly authorized Phipps to manufacture the timber into lumber, and to remove the same to Plato, and there pile it, the mortgage lien to attach to the lumber so manufactured, removed, and piled, but with express authority to Phipps to incumber the lumber so piled to Rode & Horn for not exceeding $7.50 per thousand feet, to the extent of advancements made to Phipps on the particular lumber incumbered, such mortgage to be a first lien upon the lumber, Phipps, however, not to ship the same until he had deposited in a bank named, for King's benefit, $2 for each thousand feet shipped. After the bankruptcy, Rode & Horn filed their petition with the referee, alleging, in substance, the delivery by Phipps to them of 283,000 feet of lumber at Hampton, Tenn., ready for shipment; that petitioners had not only advanced $7.50 per thousand upon this lumber, but had paid in full its purchase price, and that the lumber belonged to petitioners and was in their possession ready for shipment, although the bankrupt had included it in his schedules as a part of his estate,

and that it should be released to petitioners from the bankruptcy receivership; that Phipps had also cut and piled on the millyard at Plato about 300,000 feet of lumber on which petitioners had advanced $7.50 per thousand feet (except as to about 17,000 feet), and the lumber delivered to and taken possession of by petitioners before the bankruptcy proceedings; and that Rode & Horn will owe a balance on the contract price when the expense of hauling to Hampton has been paid, and that this lumber does not belong to the bankrupt estate. The petition further alleged that shortly before the bankruptcy petitioners had paid bankrupt $917.52, a portion of which completed the payment for the 283,000 feet at Hampton, the remainder to be applied upon the lumber at Plato, and that this payment was obtained by fraudulent misrepresentations made by the bankrupt, and, in contemplation of bankruptcy, the check for this payment having been directly turned over by the bankrupt to the receiver in bankruptcy. The petitioners asked that, unless the lumber shall be treated as belonging to them (an order to which effect was asked), the payment in question be set aside as to the portion thereof applicable to the lumber at Plato, and the last-named sum, $634.38, returned to petitioners. The petition further alleged the advancement of considerable sums in excess of the $7.50 per thousand provided by the contract, and partly on lumber discarded on inspection, which latter sum was alleged to be due petitioners. The petition refers to deeds of trust held by King and one Vaughan (apparently referred to in the bankrupt's schedules), and denies that such deeds of trust are superior and prior to the rights of Rode & Horn in the lumber, and reserves the right to file exceptions to claims thereunder when the same shall be presented "by petition in this cause"; and the petition declares that:

"Notice is hereby given that proof of said deeds of trust and of the claims and rights of the beneficiaries thereunder is demanded, and each of said instruments and each of said claims hereby challenged."

The petition contained this clause:

"As to what portion of the other funds or payments shall be held to be due petitioners must be determined by the court when the question of petitioners' ownership of the lumber referred to and petitioners' right to have returned to them the $900 payment shall be passed upon. A settlement of these matters will be necessary in order to establish the exact amount of petitioners' claim."

King also presented his claim as a prior lien against the lumber by virtue of his mortgage. The referee found King had a first lien on all the lumber in question, subject, however, to the lien in favor of Rode & Horn to the extent of $7.50 per thousand feet on the particular lumber on which they had so advanced; the latter having, as between themselves and King, a first lien to that extent, but that Rode & Horn stand on an equal footing with general creditors as respects said lien for advancements, held that Rode & Horn should account to King for $2 per thousand feet on 70,000 feet of lumber shipped from Hampton. He also held that the transaction in regard to the check for $917.52 was not fraudulent, that the check belongs

to the bankrupt's estate, and Rode & Horn not entitled thereto. The District Court affirmed the order of the referee. Neither King nor the trustee in bankruptcy have asked review.

[1] 1. As to the question of remedy: The case is docketed here as on a writ of error. King contends that this court has no jurisdiction to review the decree below upon such writ. Plaintiff in error asked on the hearing that we treat the review as on appeal, urging that such remedy was seasonably applied for, and should have been allowed. It is clear that appeal under section 25a of the bankrupt act was not seasonably applied for, because, while the application was made within 10 days after the denial of motion for rehearing, such motion was not made until more than 10 days after the entry of the order complained of, and the right to appeal, once lost, was not revived by the petition for rehearing. Conboy v. First Nat. Bank, 203 U. S. 141, 27 Sup. Ct. 50, 51 L. Ed. 128. We have no power to allow an appeal not taken within the statutory period. The application was, however, presented in time for appeal under section 24a.

[2] As to the right of review under section 24a: It is clear that if Rode & Horn had intervened merely for the assertion of their right to the lumber in question, and so to secure its possession, or merely for the purpose of establishing a claimed lien thereon, a "controversy" within section 24a would have arisen. Hewit v. Berlin Machine Works, 194 U. S. 296, 300, 24 Sup. Ct. 690, 48 L. Ed. 986; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Coder v. Arts, 213 U. S. 223, 234, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Knapp v. Milwaukee Trust Co., 216 U. S. 545, 553, 30 Sup. Ct. 412, 54 L. Ed. 610; In re Doran (C. C. A. 6) 154 Fed. 467, 468, 83 C. C. A. 265. Aside from the claim for advances made on the lumber discarded on inspection, and the claim for return of money as obtained by fraud, the only difference is that they presented their claim of ownership to the lumber in connection with their claim as creditors (as dependent upon the determination of the question of ownership), and including questions of priority between themselves and King and Vaughan. Do these facts distinguish the present case from those last cited; there being upon this review no controversy over the claim of plaintiffs in error as general creditors? We are disposed to the view that a controversy is presented under section 24a.

If, however, this is a bankruptcy proceeding, revision may be had in matter of law under section 24b, and the review may include the rank or priority of the claims (see Barnes v. Pampel, 192 Fed. 525, decided by this court January 3, 1912, and cases there cited). Plaintiff in error filed in the court below a petition entitled therein, but addressed to the judges of this court, praying for an appeal and writ of error and a "revision in matters of law and of fact." The assignment of errors asked that the "same may be reviewed upon appeal and writ of error or review." The bond is conditioned for prosecuting "appeal or petition for revision." While in the later proceedings

the theory of petition for revision seems to have been lost sight of, yet, as no order allowing such right of revision is contemplated by the statute, we would be justified as treating the case as here on petition for revision under section 24b, as well as on writ of error under section 24a. It is therefore not very material whether the case presents a controversy under section 24a, or a proceeding in bankruptcy under section 24b.

[3] Are the questions presented reviewable upon writ of error? Review of final orders under section 24a may be had upon writ of error or appeal (In re Mueller [C. C. A. 6] 135 Fed. 711, 68 C. C. A. 349), depending upon whether the proceeding in the District Court was at law or in equity, and with the difference in practice that under writ of error questions of law only can be considered, while on appeal the review may extend to the determination of questions of fact. When the proceeding is at law, writ of error is applicable, although the form of proceeding is not one recognized at common law. Parish v. Ellis, 16 Pet. 451, 10 L. Ed. 1028; Loveland on Appellate Jurisdiction, §§ 23, 24, and 25. We think that in a proceeding partaking of equitable form, as interventions in the bankruptcy court usually do, and as is the case here (although such form is not distinctly or exclusively equitable), appeal is a proper remedy, even though the questions at issue are such as can be considered in a court of law. But we also think that, when review is desired only on one or more legal questions arising under such proceeding in intervention, writ of error is appropriate for the purpose. The proceeding here under review was not necessarily equitable in character, but was of a composite nature, containing features of both legal and equitable cognizance. It was not distinctly brought upon either the law or equity side of the court, but was in that respect unclassified, as proceedings in the bankruptcy court usually are. All questions raised (with the possible exception of King's claimed lien of $2 per thousand feet) are such as could be considered in a court of law under appropriate forms of procedure, and so are reviewable under writ of error, although appeal would have been proper and would have furnished a broader remedy. As to the last-named lien, the question of remedy becomes immaterial, in view of the conclusion we reach upon the merits.

As the failure to allow an appeal seems to have been purposeful on the part of the district judge, and seems to have been acquiesced in by the plaintiffs in error until after the expiration of the six months allowed by statute for taking appeal, the case will be treated as here on writ of error.

[4] 2. The Validity of the Mortgage. We think the District Court rightly held the King mortgage not invalid, as giving the mortgagor general authority to sell the lumber at his discretion. Phipps was authorized to ship the lumber only under the Rode & Horn contract. The mortage lien was to remain on the lumber so shipped, except as permission was given to incumber it to Rode & Horn, as a first lien, to the extent of $7.50 per thousand feet for actual advances; but even then the lumber was not to be shipped away, nor be "free from the lien of this deed of trust," until a sum equaling $2 per thousand

should be deposited for King's benefit, in a bank named, for application upon the mortgage debt. We think it clear that such provision had no invalidating effect.

3. Rode & Horn's Lien. We also think the question of the existence, as between King and Rode & Horn, of a lien to the extent of $7.50 per thousand in favor of the latter, for advances actually made upon the specific lumber, both at Hampton and at Plato, is not open to question. Both the referee and the District Judge have so found, and neither King nor general creditors are complaining. We pass for the present the question whether this lien, as between Rode & Horn and general creditors, belonged to the former, or whether it passed to the latter, as was held by the court below.

[5] 4. Did the lien of $7.50 per thousand in favor of Rode & Horn belong to them exclusively, or has it passed to general creditors? As already said, the existence, as against King, of a prior lien (to the extent of $7.50 per thousand) upon the lumber, in favor of Rode & Horn, is not open. As between the bankrupt and Rode & Horn, we think it clear that under the terms of the contract, and by virtue of the possession of the lumber given Rode & Horn, their lien for advances was good. And this lien was equally good as against general creditors, unless the latter, by virtue of the recording statutes, had, before bankruptcy occurred, acquired a lien superior to that of Rode & Horn. This is so because, under the statute, when bankruptcy occurred, the latter did not operate as a seizure in favor of general creditors, and the trustee thus took the property subject to whatever liens existed thereon as against the bankrupt. York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Beiser v. Western German Bank (C. C. A. 6) 167 Fed. 486, 93 C. C. A. 122; In re Huxoll, 193 Fed. 851, decided by this court February 13, 1912.

[6] The Tennessee statute (Shannon's Code, § 3664) provides that:

"All mortgages and trusts of personalty shall be in writing, and proved and registered as hereinafter provided, to be valid against the creditors of the bargainor, or purchasers under him for value and without notice."

The District Judge was of opinion that, under this statute, "general creditors, although not armed with process, must be treated as 'creditors of the bargainor' within the meaning of the statute, and that hence, even if the original contract be regarded in equity as equivalent to a mortgage, yet being unregistered, it confers upon Rode & Horn no priority over general creditors, and therefore is not a lien against the bankrupt's estate." If the construction so put upon the Tennessee statute is the correct one, the conclusion reached was right, and in determining this question we must adopt the construction as accepted by the highest court of Tennessee. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Doran (C. C. A. 6) 154 Fed. 467, 471, 83 C. C. A. 265; In re Huxoll, supra. Expressions are to be found in several of the Tennessee decisions to the general effect that an unregistered mortgage is void as to creditors. There are several decisions recognizing the invalidity of an unregistered mortgage as against execution and attaching cred-

itors. See Bryant v. Bank. 107 Tenn. 560, 564, 64 S. W. 895; Whiteside v. Walker, 58 S. W. 1107. It has also been held that registration of a general assignment is necessary to render it effectual against attaching creditors (see Lookout Bank v. Noe, 86 Tenn. 21, 29, 5 S. W. 433; Douglas v. Bank, 97 Tenn. 133, 36 S. W. 874), also that an unregistered agreement will not prevail against creditors who have acquired a lien upon land (Kinsey v. McDearmon, 5 Cold. [Tenn.] 392); and it has been held that there is no distinction as to the creditors protected between those with and those without actual notice of the mortgage (Coward v. Culver, 12 Heisk. [Tenn.] 540). But we are cited to no decisions, and we know of none, expressly interpreting the statute in question as protecting general creditors; that is to say, those not armed with process or not having fastened upon the property. The court below cited Henderson v. McGhee, 6 Heisk. (Tenn.) 55, in support of its construction of the Tennessee statute. In our opinion this case is not in point. The sections there under consideration related only to the estates of insolvent deceased persons (being what are now Nos. 4065 and 4072 of Shannon's Code), which provide for ratable division of insolvent estates among creditors. In fact, however, it has been held in several of the Tennessee decisions that, in the settlement of estates of insolvent debtors, liens fixed in the lifetime of the debtor are given priority of satisfaction over general creditors. Gwynne v. Estes, 14 Lea (Tenn.) 662, 673; Lookout Bank v. Susong, 90 Tenn. 590, 598, 18 S. W. 389. See, also, McGuffey v. Johnson, 9 Lea (Tenn.) 555, 559; Barfield v. Cole, 4 Sneed (Tenn.) 465, 468. On the other hand, in Cowan v. Gill, 11 Lea (Tenn.) 674, 680, a statute which is now section 3752 of Shannon's Code was under consideration. That statute, which evidently relates to deeds of real estate, provides that:

"Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice."

Of the statute just quoted, it was there said:

"In Chester v. Greer, 5 Humph. 34, it is decided that creditor means a judgment creditor; Judge Turley saying: 'On the part of J. M. & J. S. Greenway, who file their bill in behalf of themselves and other creditors of Samuel G. Chester, it is contended that the deed of trust is void as to them for want of registration in proper time, these debts having been contracted before the registration of the deed. To this it is answered that though by the provisions of the 12th section of the Act of 1831, c. 90, all deeds and other instruments mentioned in the last section of the act and not registered as therein provided, are void as to existing or subsequent creditors, yet by this is meant judgment creditors, and not creditors in pais.' In Birdwell v. Cain, 1 Cold. 303, Judge Wright says: 'A purchase, if made or trust taken before the judgment existed, does not by reason of the nonregistration of the deed become infected with turpitude; and, if it be afterwards registered before other creditors acquired liens upon the property embraced in the deed, as to them it takes effect from its date, and they cannot call in question its validity.' Our law authorizing the bringing of suits by creditors without judgment, attacking conveyances as made to hinder and delay creditors, does not change or in any way affect the rule established by the cases cited, as the law applies as well to registered as to unregistered deeds."

In Insurance Co. v. Shoemaker, 95 Tenn. 72, 84, 31 S. W. 270, it was held that a deed conveying lands from husband to wife is valid

and effectual against his creditors, although its registration has been long delayed, if it was made originally in good faith and withheld from registration without fraud, and actually registered before creditors had secured a lien upon the property, citing Chester v. Greer, Birdwell v. Cain, Cowan v. Gill, and Bank v. Walker, 14 Lea (Tenn.) 299. It will be noticed that the reference to creditors in the statute under consideration in Cowan v. Gill is at least equally broad as that found in section 3664, with which we are dealing; and we think we are bound to accept this construction as applicable to the last-named section. It follows, in our opinion, that the lien of Rode & Horn for $7.50 per thousand advanced is valid as against general creditors.

5. The Further Rights of Rode & Horn in the Plato Lumber. Their claim that they are entitled to this lumber must be overruled. So far as the rights of general creditors are concerned, it would seem enough to say that the lumber was never actually delivered by the bankrupt to Rode & Horn as their lumber. As to this, the District Judge said:

"There is no evidence of any prior delivery or of any conduct of the parties which would show their intention to make delivery and pass title to Rode & Horn at any time prior to its being loaded on the cars; and I find no evidence whatever in the record of any delivery of this lumber which would operate to pass title to Rode & Horn under the executory contract of sale."

The most that can be claimed is that they had paid the bankrupt an amount sufficient to cover this lumber, but this did not necessarily pass title to the lumber. As between King and Rode & Horn, we think it clear that the latter acquired no interest beyond the lien for $7.50 per thousand advanced. King's mortgage was a present, subsisting security. It was duly filed. Rode & Horn had notice of it. It was not intended to release the mortgage lien except as to sales by Phipps actually completed. Except as to actual sales, King's lien was merely opened to the extent of allowing Rode & Horn's lien for advances to attach.

[7] 6. The Further Rights of Rode & Horn in the Hampton Lumber. Upon the question of Rode & Horn's further rights in the Hampton lumber, the latter stands somewhat differently than the lumber at Plato, in that the referee found "as a matter of fact that Phipps intended to deliver the 283,000 feet at Hampton to Rode & Horn, and did deliver the same." The District Judge did not pass upon this question of fact, but treated it as immaterial because of King's rights under the trust deed. We think, however, that the question was not immaterial. As against general creditors, if the referee's finding of facts is to stand, we think the delivery sufficient to pass title to Rode & Horn. There is no question that the lumber is fully paid for. But the question remains whether, as between King on the one hand and Rode & Horn on the other, the situation is different. On the one hand is the fact that, as found by the referee, King did not know "until the bankruptcy proceeding nor until he gave his deposition or testimony that Phipps had been paid in full for any of the lumber, nor that Rode & Horn had shipped any of it away"; also the fact that the $2 per thousand feet called for in the

trust deed had not been paid to King on any of the lumber; also, that the mortgage made this payment a condition precedent to the right to ship away, failure to make the same creating a default in the mortgage, which also gave the right of foreclosure when 75 per cent. of the timber should have been cut, there being testimony (apparently uncontradicted) that at least 75 per cent. of the timber had been cut before the bankruptcy proceedings; also that, as reported by the referee, the notes indorsed by King and secured by the trust mortgage were placed in the hands of attorneys for collection previous to the bankruptcy proceedings; also that while King knew, as found by the referee, when he took his mortgage, of the existence of the Rode & Horn contract, the latter parties, according to the same finding, knew of King's deed of trust previous to what we understand to have been the actual payment for, and delivery of, the Hampton lumber. On the other hand, are the facts, as we understand the record, that, when the Hampton lumber was finally paid for, foreclosure of the mortgage had not been begun, nor does it appear that default thereunder had been declared or notice given Rode & Horn that their right to rely upon the previously existing permission to ship the Rode & Horn lumber away (subject to the limitation as to the payment of $2 per thousand to King) had been terminated; also, the fact that by Phipps' mere failure to pay King the $2 per thousand feet the latter had been actually harmed only to the extent of the payment so required. In our opinion the mere fact of default should not operate to defeat Rode & Horn to the extent that they had actually paid for the property which the mortgagor was permitted, by the mortgagee, to sell to them; nor should the rights of Rode & Horn be irrevocably lost by the mere failure of Phipps to make to King the payment of the $2 per thousand. Under the circumstances suggested, equity does not require recognition, as against Rode & Horn, of King's prior rights in the Hampton lumber, except to the extent of the $2 per thousand feet which Phipps should have paid to King. But equity does seem to require the recognition of the prior rights of Rode & Horn except to the extent of King's prior lien of $2 per thousand feet. In this view of the case, and if, under the circumstances so stated, the Hampton lumber was actually delivered to Rode & Horn, the latter became entitled to it, not only as against general creditors, but against King as well, subject, of course, to the latter's lien for $2 per thousand feet. In what we have said regarding Rode & Horn's rights in the Hampton lumber above the lien for $7.50 per thousand feet we have assumed that the Hampton lumber was affected by the provision for sale contained in the mortgage relating to the lumber at Plato. It seems to have been so treated by both the referee and the District Judge, and by counsel in this court, as well as by King's exceptions to Rode & Horn's petition, and we find nothing in the record opposed to such treatment. The question of delivery, as well as the questions referred to in this paragraph of the opinion, relating to Rode & Horn's rights in the Hampton lumber above the lien for $7.50 per thousand, should be passed upon by the District Court, so far as not already done.

7. The Lumber Shipped from Hampton. We think King entitled to a lien of $2 per thousand upon this lumber.

8. The Item of $634.38. In view of the referee's finding of the absence of fraud, which finding was affirmed by the District Judge, this item was rightly disallowed.

For the reasons stated, the order of the District Court will be affirmed, except so far as it gave to general creditors the benefit of the lien of $7.50 per thousand for advances made by Rode & Horn upon the lumber in question, and except so far as it denied to Rode & Horn ownership of the Hampton lumber. As to these two excepted matters, the order of the District Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.