THOMAS LANGOS, et al. v. B. JACOBS, et al.

Eastern Section.    January 7, 1928.

Thos L. Carty, of Knoxville, for plaintiff in error.

Jennings, Saxton & Wright, of Knoxville, for defendant in error.

PORTRUM, J. This is an action of forcible entry and unlawful detainer, begun before a Justice of the Peace of Knox county by B. Jacobs and the Farragut Operating Company, Inc., against Thomas Langos, on the 2nd day of February, 1927. When the case was heard by the justice, B. Jacobs moved that the case be dismissed as to the Farragut Operating Company, Inc., the same being named as a party plaintiff along with him and, the defendant not objecting, the same was ordered. The case was then heard and dismissed and an appeal taken by the plaintiff B. Jacobs, to the circuit court. Upon trial there, B. Jacobs, who was then represented by other attorneys, moved to be allowed to amend his warrant by reinstating the Farragut Operating Company, Inc., as a plaintiff. This was allowed over the objections of the defendant. The case was heard and a judgment given in favor of the plaintiffs for the possession of the property and a recovery against the defendant for $95.60 as rent from January 20, 1927, to April 14, 1927, and one-half of the costs. From this judgment an appeal has been prosecuted to this court.

The leases in this case are numerous and, to avoid confusion, they will be numbered in order of time. The lessor, Farragut Operating Company, Inc., operates the building of the Farragut Hotel, located on Gay street, in Knoxville, and rents the storerooms to tenants for commercial purposes. On the 6th day of June, 1923, the Farragut Operating Company, Inc., leased to Meehan Tailoring Company one of the storerooms on the ground floor of the hotel, which is approximately nine by twelve feet, and known as number 213 West Clinch avenue, corner of Gay and Clinch street (?) for a term extending from December 31, 1923 to December 31, 1928, at a stipulated rental of $900 per annum for the first year of said term, and $1020 per annum for the succeeding four years, payable the first year in monthly installments in advance of $75 per month and for the remaining four years $85 per month in advance. It was stipulated the premises were to be used only for the purpose of "merchant tailoring, repairing, cleaning and pressing clothes" and for no other uses or purposes without the consent in writing of the lessor. The seventh section of said lease provides as follows:

"Said property shall not be assigned nor sublet to any person, company or association without the consent in writing of the lessor or his agent; and in case he consents and the said property is either assigned or sublet, such assignee or assignees, and subtenant or sub-

tenants, shall not assign or sublet on their own part without the consent of the lessor or his agent in writing.''

The tenth section of said lease provides as follows:

''In the event the lessee, his representatives and assigns, and sub-tenants (in the event an assignment or subletting be consented to) fail to pay the rent or rent notes, as it or they shall mature, or fail to comply with, perform and observe any of the conditions, covenants or agreements herein contained, the lessor, or his agents or representatives, shall have the right and option to end and terminate said lease by a notice in writing to the lessee or assignee, as the case may be, and upon ten days from such notice this lease shall cease and terminate, and the lessor shall have a right to the possession; and in the event the lease be so terminated, the lessor, as soon as he obtains the possession shall make reasonable and proper effort to rerent or re-lease, and he fails to do so to a responsible and desirable tenant at a fair rental, the lessee shall be liable for the rent of the full term. But if such tenant be obtained, so much as such new tenant pays shall be a credit upon the rent due from the lessee.''

The eleventh section of said lease contains the following provision:

''A failure to declare a forfeiture, or to terminate the lease, or to reenter when the right exists at any time, shall not exhaust the right, but it shall remain and continue and may be exercised from time to time as often as there may be any occasion or cause.''

The lease also contains this provision:

''The lessor agrees to put the lessee in the possession of the said property at the beginning of the said term and to keep ———— in the peaceful possession thereof during said term as against all adverse claimants.''

The Meehan Tailoring Company is a partnership composed of J. K. Meehan and Leo K. Meehan.

The Meehan Tailoring Company having occupied the premises for some time, on August 12, 1925, by Leo K. Meehan, made assignment of the original lease to Darwin L. Sanders. The contract of assignment provides that Darwin L. Sanders shall not have the right to re-lease or sublet the premises to any other person or persons without obtaining the written consent of the Meehan Tailoring Company, and that Darwin L. Sanders shall abide by and be bound by all the provisions of the lease of the Farragut Operating Company to the Meehan Tailoring Company, just as fully as though the provisions of the said lease were embraced in the contract of subleasing, the Meehan Tailoring Company reserving to itself all the rights and privileges of the Farragut Operating Company so far as Darwin L. Sanders was concerned.

About fifteen days thereafter or on September 24, 1925, Darwin L. Sanders subrented a portion of the leased premises to the plaintiff

in error, Thomas Langos, the portion so subrented to the plaintiff in error being the west side of the Meehan Tailoring Company located at No. 213 West Clinch avenue; and the plaintiff in error was to use said space for the business of blocking and cleaning hats. This subrenting was evidenced by a writing which contained the following language:

"The party of the second part (Tom Langos) having read the contract entered into by and between Leo K. Meehan and D. L. Sanders, and understanding the conditions and circumstances under which the party of the first part has purchased and is paying for the said Meehan Tailoring Company, agrees that this contract shall be governed by the contract between Leo K. Meehan and D. L. Sanders."

The contract referred to required, as above quoted, the consent of the lessor to the sublease, and it is uncontradicted in the testimony that Darwin L. Sanders and one of the Meehans undertook to obtain the consent of the lessor to the lease made to Thomas Langos and they represented to Thomas Langos that they had in fact obtained this consent, but it appears that this representation was false and these two men had not only failed to get the consent of the lessor but had not applied to the lessor to request the consent. It appears from the record that the lessor gave its consent to all of these leases, except the one to Thomas Langos and it knew nothing of this lease, upon request of its tenants. It says now it would not have given that consent but this declaration is not deemed material.

Thomas Langos went into possession of his portion of the room and carried on the business of hat blocking. He hung a sign on the street evidencing his business of hat blocking but it carried no name. The matters went along from September, 1925 until April, 1926, when one L. M. Creekmore, who was acting as the agent of B. Jacobs, obtained an assignment of said original lease from Darwin L. Sanders, that is to say that notwithstanding the fact Sanders had subleased to Thomas Langos and put him in possession and had represented that he had obtained the permission of the lessor, he gave a lease covering the same property or assigned the lease he had obtained from the Meehan Tailoring Company. It may be, upon a construction of this assignment, it did not carry the property leased to Thomas Langos but was made in subjection to it, the description in the assignment being "all the right, title and interest of Darwin L. Sanders," but B. Jacobs claims the lease was not made subject to the Langos lease and this seems to be the interpretation given it. This assignment was reduced to writing and signed by the parties and transferred to Creekmore all the interest, title, right and equity of said Darwin L. Sanders in said contract above referred to, that is, the contract from Meehan Tailoring Company to Darwin L. Sanders. Leo K. Meehan agreed to this

assignment to the said Creekmore and relieved the said Darwin L. Sanders from any further liability on this lease. The writing concluded with these words:

"It being the meaning and intention of this instrument to merely substitute party of the second part for party of the first part in the original contract and agreement made August 12, 1925, between the party of the first part (Leo K. Meehan) and party of the second part (Darwin L. Sanders)."

On April 14, 1926, L. M. Creekmore assigned all his right, title and interest in the contract to B. Jacobs. The same was endorsed upon the assignment of Darwin L. Sanders to L. M. Creekmore, and it was shown that Creekmore was only acting as the secret agent of B. Jacobs. On May 17, 1926, Creekmore executed a formal assignment to B. Jacobs, and Leo K. Meehan signed the written agreement, evidencing the release of Creekmore from any and all liability on account of the lease.

Leo K. Meehan and D. L. Sanders went to L. M. Waite, resident manager of the Farragut Operating Company, the lessor, and secured the consent of the Farragut Operating Company to the assignment of the original lease from Meehan Tailoring Company to Darwin L. Sanders. He verbally consented and subsequently gave his consent that B. Jacobs might occupy the property. After the controversy arose he wrote a letter consenting that B. Jacobs might sublease the property.

During the time of the negotiation between Leo K. Meehan and Darwin L. Sanders on the one part and Creekmore and B. Jacobs on the other, the last two were in the room and saw Thomas Langos in the occupancy of the premises covered by his lease. There is no evidence that they knew of the existence of his lease but after B. Jacobs obtained his lease he was informed by Langos of the Langos lease, and then Langos claimed the right to hold for the full term of his lease which expired December 31, 1928, and he tendered the rental. B. Jacobs asserted the right, that is, he told Langos that he might remain until B. Jacobs needed it when he would have to get out. Langos did not consent to this arrangement but claimed to hold under his lease. The matter stood this way for several months, Langos paying and B. Jacobs accepting the monthly rentals until January, 1927, when B. Jacobs notified Langos to vacate on or about February 2, 1927. Langos refused to vacate and this suit of forcible entry and unlawful detainer was begun as detailed at the outset.

The Farragut Operating Company intervened in this case upon the theory that it is its duty to keep its tenants in peaceful possession and to defend against the adverse claims of all others. It thinks Thomas Langos is an adverse claimant of its original lessee, Meehan Tailoring Company and that it is its duty to eject him in order that B. Jacobs may remain in peaceful possession.

We do not think the lease requires the Farragut Operating Company, the original lessor, to intervene and take sides between contending sublessees of its lessee, the Meehan Tailoring Company. These subtenants are not adverse claimants, for if the subtenant Thomas Langos has a superior legal right then the lessor has no right to take the side of a subtenant who has no legal right, and in that case, Thomas Langos would not be an adverse claimant. The lessor, Farragut Operating Company, can not eject the subtenant Thomas Langos as an adverse claimant. It may be that the Farragut Operating Company can declare a forfeiture against Meehan Tailoring Company for wrongfully making a sublease without obtaining its consent and after the forfeiture it can put B. Jacobs or any one in the possession of the property, but before the Farragut Operating Company can eject Thomas Langos in favor of B. Jacobs it must do it under some provision of the lease other than the covenant to keep the tenant in peaceful possession and to defend against adverse claimants. If the Farragut Operating Company can not eject Thomas Langos, the plaintiff in error, can B. Jacobs show a better right? He has a junior lease, taken from the same party as Thomas Langos. He also saw Thomas Langos in possession and, at any rate, Thomas Langos is bolstered by his possession, and B. Jacobs' lease describes the estate in such a way that it may not be in conflict with the lease of Thomas Langos, that is, under a construction of B. Jacobs' lease he becomes the landlord of Thomas Langos and assumes Thomas Langos' contract. We think this a fair construction of the contract. A claim is made that Thomas Langos' lease was made for more than three years and is not registered, therefore it is inferior to B. Jacobs. The question of registration will be dealt with after construing the original lease.

The lease provides for a forfeiture in case of subletting without the consent of the lessor, upon notice. It is not proven in this case that the original lessor consented to the subleasing to Thomas Langos, and this right to forfeiture is a continuing right. Therefore, the Farragut Operating Company has a contractual right to enforce a forfeiture against the lease made by it to Meehan Tailoring Company. But this right can not be exercised in this case for the reason that the stipulated notice was not given. Contracts authorizing forfeitures are construed strictly against the right of forfeiture. Reed v. Estes, 113 Tenn., 203; Landlord and Tenant, 36 C. J., Sec. 1757, page 598.

If the lessor has lost the right to forfeit in this suit, then his only claim against the lessee or a sublessee would be a claim for damage for breach of covenant and only the right to forfeiture carries with it the right to possession so far as the plaintiff Farragut Operating Company is concerned.

Going back to the question of the registration of this lease, none of these leases were registered, beginning with the Farragut Operating Company. It seems then that the lease first in time should prevail, notwithstanding sections of Shannon's Code quoted as follows:

"Sec. 3663. Leases, when to be in writing and registered.—Leases for more than three years shall be in writing, and, to be valid against any person other than the lessor, his heirs and devisees, and persons having actual notice thereof, shall be proved and registered as hereinafter provided."

"Sec. 3697. Writings that may be registered.—The following writings may be registered:

"(15) Leases for more than three years from the time of making the same."

But since none of the leases were registered then what construction should be given to section 3663? The courts do not seem to have construed this section under similar facts but the section following it has been construed and the construction is analogous, to our mind. The section and the construction follow:

"Sec. 3664. Personalty; mortgages of, to be in writing, etc.—All mortgages and trusts of personalty shall be in writing, and proved and registered as hereinafter provided, to be valid against the creditors of the bargainor, or purchasers under him for value and without notice."

Using the language of the codifier:

"Under this section, a contract giving a lien on personalty and equivalent to a chattel mortgage, made in good faith, for value, and good as against the mortgagor, although not registered, is valid as against his general creditors in bankruptcy; the general creditors are those not armed with process or not having fastened upon the property. Rhode & Horn v. Phipps, 195 Fed., 414, 115 C. C. A., 316.''

We think that before the junior lease can become fastened upon the property in order to defeat a senior lease, it must be registered. And since the lease to B. Jacobs was not registered, it is inferior to a senior unregistered lease.

But let us assume for argument that B. Jacobs' lease is superior to Thomas Langos' lease on the supposition that the consent of the lessor gives it validity (which in our judgment is not true, the lessor's only remedy being the right of forfeiture), then Thomas Langos was a tenant from year to year (Rogers v. Wheaton, supra) because he was in possession, and of the further fact, he held over into another year, paying rent to Jacobs. Therefore, he was entitled to reasonable notice to quit before the expiration of the year. It is shown his lease runs from September and his first notice was given in January to quit on the 2nd day of February. He had no reasonable notice to quit prior to September. The lease could not be terminated in the middle of the year. Shepherd v. Cummings, 1 Coldwell, 356.

It is apparent from what has been said that this court is of the opinion that neither the Farragut Operating Company nor B. Jacobs has any right to the possession of the leasehold, nor a right to maintain this action at this time, and the action of the Circuit Judge in adjudging in favor of the plaintiffs below was erroneous. His judgment is reversed. The plaintiff in error, Thomas Langos, tendered into court the rents due and B. Jacobs is entitled to this after the satisfaction of the costs in the case. A judgment is entered and an execution may issue against the Farragut Operating Company, Inc., and Thomas Langos for one-half of the costs each, these two being taxed with the whole costs.

Snodgrass and Thompson, JJ., concur.