## In re LAIRD.

## In re COE et al.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1901.)

### No. 921.

BANKRUPTCY—STATUTORY LABOR LIENS—OHIO STATUTE.

Rev. St. Ohio, § 3206a, gives laborers a lien on the real estate of their employers for their wages, and provides how it shall be secured, by the filing of a statement of the claim for record, etc. It further provides as follows: "And in all cases where the property of an employer is placed in the hands of an assignee, receiver, or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed shall be first paid out of the trust fund, in preference to all other claims against such employer except claims for taxes and costs of administering the trust." The property of a manufacturing firm was placed by a state court in the hands of a receiver, who reduced it to money, and from the fund he was ordered by the court to pay the claims of laborers for wages accruing within three months prior to his appointment. Before such order had been complied with, the firm and its members were adjudged bankrupt, the trustee intervened in the suit in the state court, and the fund in the hands of the receiver was, on the order of an appellate court, turned over to such trustee. *Held*, that the state statute in effect created a lien on the fund in the hands of the receiver in behalf of the labor claimants, which was not devested by the bankruptcy act or the proceedings thereunder, but should be recognized and enforced by the bankruptcy court.

### Agreed Statement from Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This case raises the question as to whether certain labor claimants who filed claims asking for preference in payment out of the assets of the bankrupt in the hands of the trustee are entitled thereto. It is submitted upon an agreed statement of fact which is as follows:

"(1) On the 27th day of August, 1898, and for some time prior thereto, B. F. Powers, George E. Needham, Henry L. Coe, and E. C. Powers, as partners under the firm name and style of Coe-Powers & Co., were engaged in the manufacture of certain products of iron by the operation of a large iron mill at Findlay, Ohio.

"(2) On said 27th day of August, 1898, said B. F. Powers and George E. Needham filed their petition for receiver, dissolution of partnership, and equitable relief in the court of common pleas of said county of Cuyahoga, naming H. L. Coe and E. C. Powers defendants therein, and setting forth in their said petition the facts following, to wit: That said partnership had been formed as and for the purpose aforesaid in December, '97. That adjustments and changes were necessary requiring additional capital and liability, which capital and liability the plaintiffs were, to some extent, compelled to advance and assume largely in excess of the amounts advanced and obligations assumed by the defendants, or either of them; for which amounts so advanced and obligations assumed by the defendants the plaintiffs had no security: and that there is an irreconcilable difference of opinion between the plaintiffs and defendants as to the management of the business, and the plaintiffs will sustain irreparable injury unless a receiver is appointed to take charge of the assets of the firm, and administer the same for the interest of the members thereof, the creditors and all persons interested. That the firm had on hand a large quantity of raw material, with supplies of coal and other articles, and has unfilled contracts for tubing and other things manufactured by said firm aggregating $150,000. That, if the said orders can be filled under competent and economical management, there will be a large net profit realized therefrom; and that, if they are not filled, and the work should stop, there will be a great loss, not only of the benefits of the contracts made with the purchasers, but there will be a great sacrifice on materials and supplies on hand. And the plaintiffs further say that, when said firm was formed, it was agreed that the same should exist only so long as the same was prosperous and satisfactory to the plaintiffs; that said business, not being prosperous, is not satisfactory to the plaintiffs; and that they have a right to have said firm dissolved, the assets reduced to money, and applied on the debts, and the balance divided among the members of the firm. And the plaintiffs further say that it will be advantageous for said receiver to continue the business, at least to the extent of filling the orders now existing, and working up material now on hand, purchasing such material as may be necessary for the economical management of the business. And concluding with a prayer that a receiver be appointed for the purpose aforesaid.

"(3) That, no opposition to said petition and prayer being interposed by the defendants, W. A. Creech was, on the 27th day of August, 1898, duly appointed by said court of common pleas of said county as receiver, and as such duly qualified according to law, and immediately entered upon the performance of his duties as such receiver, and so continued under the orders of said court until relieved therefrom as hereinafter stated.

"(4) That on said 27th day of August, 1898, there was due and payable to said labor claimants, the several amounts set opposite their respective names for labor performed as operatives for the defendants in their said mill within three months next preceding that date, the several sums set opposite their respective names in said schedule attached to this agreed statement of facts, and marked 'Exhibit A.' That, prior to the filing of the petition in bankruptcy, said labor claimants, and each of them, filed with said receiver an itemized and duly-verified statement of their said account for allowance and payment by said receiver as secured labor claims under the provisions of section 3206a, Rev. St. Ohio.

"(5) Under the order of said court said receiver converted the assets of said firm into money, duly reporting the same to said court. December 24, 1898, a petition in involuntary bankruptcy was filed by Samuel Mather et al. against said partnership of Coe-Powers & Co., as well as against the individual members of said firm, of the pendency of which petition the said receiver had notice within one week after the filing thereof. On the 12th day of January, 1899, said W. A. Creech, receiver, duly filed in said court his report of that date, a copy of which, with all indorsements thereon, is hereto attached, marked 'Exhibit B,' and made a part of this stipulation. It is admitted that the statements set forth in the said motion are true; that the list of said labor claimants mentioned in said motion is the same as attached to this statement of facts and marked 'Exhibit A,' and that no payments have subsequently been made to apply thereon. On the 13th day of January, 1899, said motion was granted by W. C. Ong, one of the judges of said court of common pleas, and duly entered upon the journal of said court; but said receiver, acting upon advice of his counsel, did not comply with said order granting said motion, and the order granting said motion was never appealed from, or in any way modified, except so far as the same may be found to have been affected by the proceedings in bankruptcy then pending, or by the subsequent rulings of the state courts as hereinafter set forth. On February 27, 1899, said co-partnership of Coe-Powers & Co., and the individual members thereof, were duly adjudged bankrupt on grounds set out in opinion of Judge Ricks, reported in 92 Fed. 333, and on the 7th day of April, 1899, Henry S. Davis, Esq., was duly elected by the creditors of said bankrupts as trustee, and duly qualified as such, and on May 13, 1899, said Henry S. Davis, trustee as aforesaid, filed his answer and cross petition in said case in said common pleas court, asking an order from said court directing its said receiver to turn over to him all properties and assets of the partnership of said Coe-Powers & Co. This was the first appearance in that case by said trustee. May 30, 1899, said trustee filed his application in the United States district court, Northern district of Ohio, Eastern division, in said cause, being No. 83, in bankruptcy, for a summary order upon the receiver, W. A. Creech, directing him to turn over all property to said trustee, which order was granted by said court, and of which said receiver had due notice, and to which order no error or appeal has been prosecuted.

"(6) June 13, 1899, said cause, still pending in the said court of common pleas, came on to be heard on the application of said trustee for the possession of said assets, and on the application of said labor claimants for the payment of the several amounts due them under the former order of said Judge Ong, and upon full consideration by said court the application of said trustee was refused, and an order entered for the payment of said labor claims under the former order of Judge Ong, and further ordered that the residue of said funds and assets be turned over to said trustee in bankruptcy; to which order and judgment of the court in that behalf said trustee, by his counsel, excepted, and upon proceeding in error to the circuit court of said county of Cuyahoga, prosecuted by said trustee to said court, the said circuit court reversed the order of Judge Dissette in that behalf, and directed said receiver to turn over all of said assets to said trustee, the grounds of reversal appearing in Davis v. Coe, 19 Ohio Cir. Ct. R. 639, to which ruling of said court in that behalf said labor claimants at the time excepted, and set about to institute proceedings in the supreme court of Ohio to reverse said order of the circuit court. After the expiration of the time limit for proving of claims against said bankrupt's estate, it was stipulated between the said labor claimants, the said trustee, Henry S. Davis, and all other persons in any manner interested in said estate, that said funds be turned over to said trustee without further proceedings in the state courts, and without prejudice to the interest of any parties to said stipulation, and that their respective rights be determined by the referee or the court to which said cause may be carried for review upon the statement of facts herein set forth, and the terms of the said stipulation, which said stipulation was duly approved and signed by all of said parties in interest. It was and is one of the provisions of the said stipulation that one of the said labor claimants, to wit, the above-named Archibald Laird, might prove his individual

claim; which said claim so proven, and which was then and there so proven according to law, should be submitted as test case, by the decision of which all parties to the said stipulation should abide; that, if Archibald Laird be found entitled to the payment in full of his said claim, then all the residue of said claimants should be paid in like manner as set forth in said Schedule A; a fortiori, if the claim of said Archibald Laird be not sustained, then none of said claimants should be paid as preferred claims. Said funds being turned over to said trustee, said Archibald Laird's claim being duly proven and filed as a secured claim with said referee for allowance, to the allowance of which as a secured, preferred, or priority claim the State National Bank, a creditor, and the trustee, filed objections with said referee, and upon hearing of said objections, and under said stipulation and agreed statement of facts, the referee held and decided that said labor claimants held no liens upon said funds, nor were they preferred or priority creditors under any provisions of the bankrupt act or the laws of Ohio, or order of said court of common pleas of January 13, 1899, hereinbefore referred to. And thereupon this cause was submitted to his honor, Judge A. J. Ricks, by petition in review, as set forth in the petition in this case.

"(7) It is conceded that section 3206a, Rev. St. Ohio, upon which these labor claimants rely, as well as upon the decisions of the court of common pleas of January 13, 1899, is in words following, to wit: 'In all cases where property of an employer is placed in the hands of an assignee, or receiver, or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed shall be first paid out of the trust fund in preference to all other claims against such employer, except claims for taxes and costs of administering the trust.' And that said section was in full force at the time of and during the whole period covered by this controversy. And it is further admitted that said firm of Coe-Powers & Co. was, on the 27th day of August, 1898, in fact insolvent."

The district judge held, affirming the report of the referee, that the claim of preference for labor performed within three months before the appointment of the receiver in the Ohio court did not constitute a preferential claim. This proceeding brings that judgment in review.

J. A. Bope and A. B. Thompson, for petitioners.

F. S. McGowan, for respondents.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The determination of the right to priority of the demands of the labor claimants in this case depends in the first instance upon a construction of the Ohio statute (section 3206a). This act was passed April 18, 1883, and is entitled "An act supplementary to section 3206 of the Revised Statutes of Ohio, providing a lien for laborers, miners, mechanics and others, for their labor." 80 Ohio Laws, 80, p. 183. It reads as follows:

"Laborers and employés of any persons, association of persons or corporation, whether such employment be at agriculture, mining, manufacture or other manual labor, shall have a lien upon the real property of their employers for their wages, which is hereby declared to be superior to the following liens taken or attaching during the existence of such unpaid labor claims, to wit: liens of attachment, liens of mortgage given or taken at a time of actual insolvency of the debtor, or with a view of preferring creditors or to secure a pre-existing debt, and superior to all claims for homestead or other exemptions, except under section fifty-four hundred and thirty; and in all cases where property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall be first paid out of the trust fund, in preference to all other claims

against such employer, except claims for taxes and the costs of administering the trust. The lien herein provided shall be deemed to be waived by the laborer or employé, as to any portion of such labor, unless within thirty days from the expiration of three months from the performance of such portion, he shall file with the recorder of the county where the labor was performed, an itemized statement verified by affidavit, of the amount, kind and value of the labor performed within said period, with all credits and offsets, and the amount then due him therefor, which verified statement, when so filed shall be recorded in a book kept for the purpose, and shall become and operate as a lien upon the real property of the employer without any specific description thereof, for the period of one year from and after the filing thereof, and if an action is brought to enforce the lien within that time, it shall continue in force until finally adjudicated; and the proceedings to enforce such lien shall be the same as in other cases of lien, against the owner of the property and all other persons interested provided that if several persons have or obtained liens under the provisions of this section, against the property of the same employer, they shall have no priority among themselves, but all shall be paid pro rata, nor shall they have priority over those obtaining liens under sections thirty-one hundred and eighty-four, thirty-one hundred and eighty-five, thirty-one hundred and eighty-six and thirty-one hundred and eighty-seven of this chapter, but the persons obtaining liens under said sections thirty-one hundred and eighty-four, thirty-one hundred and eighty-five, thirty-one hundred and eighty-six, and thirty-one hundred and eighty-seven shall have priority as provided therein."

This section undertakes to provide a means by which laborers or employés can obtain a lien upon the real property of their employer which shall be superior to certain other liens named. The lien thus provided for is to be obtained by filing with the recorder of the county where the labor was performed, within thirty days from the expiration of three months from the performance, an itemized statement, verified and authenticated as directed in the statute. Into the body of this statute this provision is injected:

"And in all cases where property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall be first paid out of the trust fund, in preference to all other claims against such employer, except claims for taxes and costs of administering the trust."

It is not specifically stated in this connection that the claim in favor of the laborer thus to be preferred shall be a lien upon the debtor's property, but it is provided that, in the event property of an employer is placed in the hands of an assignee, receiver, or trustee, such claim shall be first paid out of the trust funds, in preference to all other claims excepting only taxes and costs of administering the trust. As the statute reads, claims of all classes are to be postponed to the labor claims accruing within the period mentioned, whether the same have theretofore constituted liens upon the property or not. It is the manifest purpose of this statute to give this class of claims a preference over all other demands whatsoever with the exception of taxes and costs of administration. We learn from the agreed statement of facts in this case that the receiver, after his appointment on August 27, 1898, and before any interference to acquire the estate for the trustee in bankruptcy, had reduced the property of the insolvent to money, and had a fund in his hands more than sufficient to pay these labor claims which had been duly filed with him. Independently now of any

effect which the bankruptcy proceedings may have upon the question of the standing of these claims as a lien upon the fund, it is apparent that it is the purpose of the Ohio statute, when property of an employer shall be placed by assignment or receivership' beyond the reach of those who may have assisted in its creation by their labor to the extent of claims which have accrued within three months prior thereto, to fasten upon it a charge which shall yield in priority of payment only to taxes and costs of administering the trust. This being the object and purpose of the statute, it seems to us tantamount to charging upon such funds a specific lien in favor of this class of creditors. Persons who deal with an employer after the passage of this statute must be held to know that, in case the property is placed in the hands of an assignee or receiver, the resulting fund from the administration of such trust shall first be subjected to the payment of such liens. Such a charge is in fact a lien. 2 Bouv. Law Dict. p. 47, defines a lien as:

"A hold or claim which one person has upon the property of another as security for some debt or charge. In every case in which property, either real or personal, is charged with the payment of a debt or duty, every such charge may be denominated a lien on the property. Whit. Lien. It differs from an estate in or title to the property, as it may be discharged at any time by payment of the sum for which the lien attaches. It differs from a mortgage in the fact that a mortgage is made, and the property delivered, or otherwise, for the express purpose of security; while the lien attaches as incidental to the main purpose of the bailment, or, as in case of judgment, by mere act of the law, without any act of the party. In this general sense the word is commonly used by English and American law writers to include those preferred or privileged claims given by statute or by admiralty law, and which seems to have been adopted from the civil law, as well as the security existing at common law, to which the term more exactly applies."

In the fund realized from the administration of the trust, labor claimants who have performed service within three months before the property was taken to the uses of the trust have an interest. The statute charges the fund in their favor with the amount of their claims. We are of opinion that this is a charge or lien which cannot be interfered with to the prejudice of those entitled to it under the statute. An attempt to raise the assignment or discharge the receiver, ignoring the statutory charge in favor of labor claimants, would be nugatory as to them. The statute has vested this right in cases of this character by a distinct charge upon the fund, which, if it could be said not technically to constitute a lien, has, nevertheless, all the characteristics and effect of one. This section of the statutes has not been before the supreme court of Ohio for construction, so far as we are advised. In the state circuit court of the Sixth circuit it was held that a laborer in such case was entitled to a preference in payment for work done without filing an itemized account with the recorder, as is required where a lien is acquired upon real estate; and that court held, furthermore, that the legislature has the constitutional power to make such claim for labor superior to all other liens. Trust v. Oil Co., 19 Ohio Cir. Ct. R. 727. In the case of Devine v. Taylor, 12 Ohio Cir. Ct. R. 729, the same court, speaking of a laborer who had performed service

within three months next preceding the appointment of a receiver, says:

"He comes under this clause, and, so far as his claim is concerned, we think he obtained a lien in preference to the other general creditors who appear in this case."

In Goebel's Ohio Probate Report (page 94), in an opinion which we are informed by a note was affirmed by the circuit court of Hamilton county, it is said:

"The middle clause of said section, herein referred to, gives to employés, where property of an employer is placed in the hands of an assignee, receiver, or trustee, a lien upon the trust fund in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust, when such claims have accrued during the three months preceding the appointment of such assignee, trustee or receiver."

We therefore reach the conclusion that it was the purpose and object of this statute, which has been made effectual by its terms, to make a charge or lien upon the fund arising from property placed in the hands of a receiver in favor of labor claimants for service performed within three months.

It is claimed, however, that, the petition in bankruptcy having been filed within four months of the appointment of a receiver, the lien is avoided, under section 67, Bankr. Act 1898, subds. "c," "f." Subdivision "c" undertakes under certain circumstances to avoid liens. It is aimed at certain liens which are "created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy." This is not a lien created by suit or proceedings at law or in equity. The lien is statutory, and is given perforce of the statute to those who have performed labor within three months of the receivership. No more, in our judgment, does it come under subdivision "f," which provides:

"That all levies, judgments, attachments or other liens, obtained through legal proceedings against a person, who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt."

The lien of the statute is certainly not a levy, judgment, or attachment obtained through legal proceedings. It is true, the receiver in the state court was appointed in legal proceedings, but the lien was not obtained as a result of a proceeding with a view to its establishment. It was created by the statute upon the happening of the events preceding,—the performing of the labor, and the placing of the employer's property in the hands of a receiver.

These views are in harmony with the decision of the United States district court in Wisconsin in Re Kerby-Dennis Co., affirmed in 36 C. C. A. 677, 95 Fed. 116. In affirming the holding of Judge Seaman in the district court, who held that the lien for labor created by the Michigan statute was not dissolved by the bankruptcy act, Judge Jenkins, delivering the opinion, says:

"It is to be observed that the lien in the case before us was not obtained through 'legal proceedings.' It is a creature of the statute, arising from, and immediately upon, the performance of labor. The legal proceedings contemplated by the statute do not create a lien, but enforce a lien already existing."

After summarizing the provisions of section 67 and quoting section 67c, which provides "a lien created by or obtained in or pursuant to any suit or proceedings at law or in equity * * * shall be dissolved," etc., the learned judge says:

"It is thus clear to us that the design of congress was to protect all liens. whether arising by contract or by statute, and only to avoid those which are in fraud of the act, and those which have been secured by and arise from legal proceedings within the limited time specified before the bankruptcy. 'Expressio unius est exclusio alterius.' We cannot indulge the presumption that congress intended to avoid a lien secured by the act of labor, and preserved and continued in force only when legal proceedings were instituted within a specified time. Such construction would avoid all mechanics' liens, and all the liens of laborers, which the laws of the various states have for years sought to protect and to prefer."

See, also, In re Emslie, 42 C. C. A. 350, 102 Fed. 291.

It is true, in the Kerby-Dennis Case the lien under consideration is specifically given by the statute when the labor is performed, but in the construction we have given to the Ohio statute the lien arises when the property has been placed in the hands of a receiver, as pointed out in the statute. We do not think such liens, creations of the statute, come within the letter or spirit of section 67, which avoids certain judgments and liens.

This view of the case renders it unnecessary to determine the effect of the order of the state court, made after instituting proceedings in bankruptcy on application of the receiver, ordering him to pay the labor claims. It is to be remarked that, before the order was complied with, the trustee in bankruptcy intervened; and, while the common pleas court ordered the fund to be turned over to the labor claimants, upon review in the circuit court that order was reversed, and the fund ordered to be turned over to the trustee in bankruptcy to be administered in the federal court. We rest our decision upon the proposition that upon the facts disclosed a lien had been created under the state statute in favor of these labor claimants, which was not devested by the proceedings in bankruptcy, and that the fund was chargeable with this lien, which should be recognized and enforced in the bankruptcy court. In this view of the case, we think the district judge erred in denying a preference of claim in favor of these laborers. It is undoubtedly true that the bankrupt act has made provision for the payment of certain preferred claims, and that the provision of that act in administering an estate in bankruptcy supersedes the state law upon the same subject; but where the lien has attached before the fund has been turned over to the bankruptcy court, and is not one avoided by the act, it will be respected, although it may have arisen under a state statute. Judgment reversed, and case remanded to the district court, with instructions to make such orders in distributing the estate as may be necessary in conformity to this opinion; the costs of this proceeding to be paid by the trustee out of the funds in his hands.