### EMERSON et al. v. CASTOR et al.

### In re CATARACT RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit. October 12, 1916.)

#### No. 2829.

**1.** BANKRUPTCY ⬤➾455—PROCEEDINGS—APPEALS.

A rubber company incorporated in New York, having its principal place of business in Rhode Island, maintained a plant in Ohio. At the suit of appellee, one of its employés, a receiver was appointed and ordered to take possession of the company's assets in Ohio. Two days later proceedings in involuntary bankruptcy were commenced in the District Court for Rhode Island, and the company was adjudged a bankrupt. Appellant, who was appointed receiver, was by the District Court for Ohio appointed ancillary receiver of the bankrupt to collect assets located in that state and to carry into force and effect the orders of the original court of jurisdiction. Thereafter the receiver appointed in the Ohio state court filed a final report, showing a considerable balance in his hands, and on the same day the Ohio state court approved the report and entered an order, reciting that the federal District Court for Ohio had made an order for it and its receiver to pay over to appellant, the receiver, the balance in his hands. Thereupon appellees asserted liens against, and claims for priority in, the funds under Gen. Code Ohio, § 11138, giving priority to laborers' and operatives' claims to the amount of $300. In no case was the fact of the rendition of services or their value in dispute. The claims of appellees to priorities were sustained. *Held*, that the proceeding plainly was not one to secure a judgment allowing a debt or claim, and therefore an appeal from an adverse decree was not governed by Bankruptcy Act July 1, 1898, c. 541, § 25a, cl. 3, 30 Stat. 553 (Comp. St. 1913, § 9609), allowing appeals in such cases where the amount involved is $500 or over.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 916; Dec. Dig. ⬤➾455.]

**2.** BANKRUPTCY ⬤➾440—PROCEEDINGS—APPEALS.

The case, although informally presented in the court below, gave rise to a controversy in bankruptcy proceedings amounting to an intervention under Bankruptcy Act July 1, 1898, § 24a (Comp. St. 1913, § 9608); the proceeding was not open to revision here, under section 24b of the act, since the fund was recovered in the court below subject to liens alleged to exist against it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⬤➾440.]

---

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ☞450½, New, vol. 14 Key-No. Series—PROCEEDINGS—APPEALS—AMOUNT IN CONTROVERSY.

The right of appeal in bankruptcy proceedings given by Bankruptcy Act July 1, 1898, § 24a, is not affected by the amount in controversy.

4. BANKRUPTCY ☞11.—PROCEEDINGS—ANCILLARY PROCEEDINGS.

In such case, though appellant receiver was appointed trustee before the state court entered the order directing payment of the fund to him, and Bankruptcy Act July 1, 1898, § 70a (Comp. St. 1913, § 9654), declares that the trustee shall be vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt, the District Court for Ohio did not, by reason of appellant's appointment as trustee, lose the right to determine in the ancillary proceedings claims of local creditors to liens and priorities, for the court had ancillary jurisdiction under section 2, cl. 20, as amended by Act June 25, 1910, c. 412, § 2, 36 Stat. 839 (Comp. St. 1913, § 9586), over persons or property within its territorial limits in aid of the receiver or trustee appointed in bankruptcy proceedings pending in other courts, and appellant could not, having invoked such jurisdiction, at his option withdraw the fund from the custody of the court under authority of which he secured it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. ☞11.]

5. BANKRUPTCY ☞11.—PROCEEDINGS—DISTRICT COURT—ANCILLARY JURISDICTION.

As District Courts in bankruptcy possess ancillary jurisdiction to make orders and issue process in aid of proceedings pending in other districts, such ancillary jurisdiction carries with it power for the ancillary tribunal to decide questions of liens and priorities to property over which it exercises jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. ☞11.]

6. BANKRUPTCY ☞350—PRIORITIES—LABORERS—OPERATORS.

Gen. Code Ohio, § 8339, provides that in all cases when property of an employer is placed in the hands of an assignee, receiver, or trustee, claims due for labor performed within the period of 3 months prior to the time such assignee, receiver, or trustee is appointed shall first be paid in preference to all other claims, except claims for taxes and costs of administration, while section 11138 declares that every person who has performed labor as an operative in the service of the assignor within 12 months preceding the assignment shall be entitled to receive out of the trust funds, before the paying of other creditors, the full amount of wages due for such labor not exceeding $300. The latter section appeared in the chapter regulating the administration and distribution of estates of insolvent debtors, while the former was part of the chapter providing for liens of laborers and employés of any person. *Held*, that as the two sections were distinct, providing different time limits, the one fixing an amount for which the claim might be asserted, and the latter fixing none, the latter section must be construed as not applying where a receiver or trustee is appointed, and hence laborers or operatives having claims against an insolvent employer are not, receivers having been appointed before bankruptcy and its assets subsequently taken over by the receiver and trustee in bankruptcy, entitled to assert claims under section 11138, but must assert them under section 8339.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ☞350.]

7. BANKRUPTCY ☞350—PRIORITIES—PERSONS ENTITLED—LABORERS.

Within Gen. Code Ohio, § 8339, giving priority to claims due for labor performed, employés of a rubber company who, on its falling into difficulties, abandoned their work of superintendence and engineering and

discharged manual labor in manufacturing rubber tires, are, despite their superior titles and higher rate of pay, entitled to priority as laborers.

[Ed. Note.— -For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ☞350.]

8. BANKRUPTCY ☞350—REVIEW—HARMLESS ERROR.

A decree, awarding priority to laborers under state statute, is not open to objection on the ground that it failed distinctly to give effect to Bankruptcy Act July 1, 1898, § 64b, cl. 4 (Comp. St. 1913, § 9648), giving priority to claims of laborers for services rendered within three months of institution of proceeding, where under the circumstances the allowances must have been the same.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. ☞350.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio, in Bankruptcy; John H. Clarke, Judge.

In the matter of the bankruptcy of the Cataract Rubber Company. Proceeding by Robert S. Emerson, as trustee in bankruptcy and as receiver of the bankrupt, and another, for the recovery of property against which Charles A. Castor and others asserted liens and priorities. From a decree upholding the liens, the receiver and trustee appeals. Reversed and remanded, with directions for modification.

The Cataract Rubber Company was incorporated . under the laws of the state of New York, and its principal place of business was in the state of Rhode Island. The company maintained and operated a plant for the manufacture of rubber tires in the city of Wooster, Wayne county, Ohio. October 24, 1914, in the common pleas court of that county, and at the suit of I. C. Emery, a receiver was appointed and ordered to take possession of the company's assets then in Wayne county. Two days later, proceedings in involuntary bankruptcy were commenced against the company in the District Court of Rhode Island, and Robert S. Emerson was on the same day appointed as receiver in bankruptcy; and on November 7th the company was adjudged bankrupt. On the 18th of that month, and upon petition of creditors who were also petitioners in the involuntary petition in bankruptcy, Robert S. Emerson was appointed by the court below as ancillary receiver of the bankrupt "in and for the Northern district of Ohio, with all of the rights and powers to carry into force and effect the orders of the original court of jurisdiction." December 7th following, Robert S. Emerson was elected trustee in bankruptcy at Providence, R. I. Three days later the receiver, appointed as stated in the Wayne common pleas court, reported to that court that he had sold the rubber company's assets, and later in the month (December 31st) filed his final report in that court, showing the net balance of cash assets in his hands to be $1,259.74. On the same day the common pleas court approved and confirmed the report, and also entered an order, reciting that the federal District Court of the Northern District of Ohio had "made an order for the [common pleas] court and the receiver in this case to pay over to said Robert Emerson, receiver and now trustee of the Cataract Rubber Company, bankrupt, the balance of the money and assets in his hands," and directing its (the common pleas') own receiver to "pay over to said Robert Emerson, receiver and now trustee of the Cataract Rubber Company, said balance in his hands. * ∗ ∗ " On the 20th of January following, the court below modified in two particulars its previous order appointing Emerson as ancillary receiver: (1) Investing the ancillary receiver with the "right and power to carry into force and effect the orders of this court which may be entered herein"; and (2) directing the ancillary receiver to "report and account to this court for all property" of the bankrupt coming into his (the ancillary receiver's) "possession in the

Northern district of Ohio," and to "hold the same subject to the further order of this court"—to which exception was reserved. On the same day, the court below entered an order, reciting that it was "made to appear to the court that residents of the Northern district of Ohio hold labor claims against the bankrupt herein, and that there is doubt as to whether or not said claims are a lien upon the property of said bankrupt," and appointing a special master to take testimony as to the character and amount of the claims, the times the services were rendered and the claims became payable, and to report findings with the testimony taken. March 26th, the ancillary receiver reported to the court below that the state receiver had paid, though without naming the date, "to the trustee in bankruptcy," the balance, before stated, remaining in the state receiver's hands, "which the said trustee in bankruptcy now holds, subject to the orders of the bankruptcy court."

The special master filed his report in the court below, stating there were nine creditors who were asking preferences under section 11138, Ohio Gen. Code, for services rendered in different capacities as employés of the bankrupt during stated periods prior to the bankruptcy and at the plant in Wooster; the sums so earned by each claimant; and his allowance to each in accordance with the section mentioned of the Ohio Code and the fifth clause of section 64b of the Bankruptcy Act. Emerson reserved exceptions to this report in his capacities both as ancillary receiver and trustee. The total recovery so allowed exceeded the sum paid over by the state receiver, and counsel agree that this fund is in the hands of the District Court clerk. The court below approved the report, and entered an order, directing payment to be made to the claimants pro rata, according to the allowances made to them, respectively, out of the balance remaining in the fund in question after payment of the costs and the special master's fee. Emerson, as trustee and as ancillary receiver, and the Manhasset Manufacturing Company, a petitioning creditor, appeal from this order.

A. A. Stearns, of Cleveland, Ohio, for appellants.
A. D. Metz, of Wooster, Ohio, for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SESSIONS, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The ultimate question concerns the distribution of the fund pointed out in the statement. The appellants contend that the fund should be turned over to the court of primary jurisdiction, the District Court of Rhode Island, sitting in bankruptcy, for purposes of distribution among all the creditors of the bankrupt estate. The appellees, who are the nine labor claimants, insist that the court below, sitting in bankruptcy and as the ancillary tribunal, is empowered to pass upon the questions of priority and to provide for applying the fund accordingly.

[1] Before the issue thus made can be considered, it will be necessary to pass upon a preliminary matter. The appellees have presented a motion to dismiss the appeal. The grounds of the motion in substance are: (a) That "no claim allowed or judgment or decree rendered" exceeds $300, and so the appeal cannot be sustained under section 25a, cl. 3, of the Bankruptcy Act; and (b) that such a case as this is not open to appeal under any other provision of that act. The theory of the first ground is that the final action of the court below was the rendition of "a judgment allowing * * * a debt or claim" in favor of the claimants, respectively, for sums less than "five hundred dollars," and that since the claims as allowed are separate and

distinct in ownership, the appeal must fail for lack of the requisite amount in any of them. This is a misconception of the case. Neither the fact that the appellees severally rendered the services as to which priority was determined, nor the value of such services, is in any instance in dispute. The testimony taken before the special master shows that the value of the services rendered, respectively, by two of the appellees was in excess of the minimum sum, $500, named in clause 3 of section 25a; and those two amounts were each reduced to $300, because of the limitation contained in section 11138, Ohio Gen. Code, on which the appellees mainly rely. The positions taken by the appellees were that under that section of the Ohio statute each was entitled to receive out of the bankrupt fund in preference to other creditors "the full amount of wages due for" his "labor, not exceeding three hundred dollars"; in other words, they sought to have the fund distributed and applied in payment of acknowledged claims, at least in sums not exceeding in any instance the amount prescribed by the state statute. It is, moreover, to be observed that when the bankruptcy proceedings were commenced against the Cataract Company and the adjudication took place in the District Court of Rhode Island, possession of the property which is represented by the fund in question was in the receiver appointed in the common pleas court of Wayne county, Ohio; that this receivership was created at the suit of one of the present appellees for the benefit of himself and the other creditors of the Cataract Company; that it became necessary to institute a proceeding in the court below, as an ancillary tribunal, to gain possession of this property and ultimately of the fund; and consequently that neither the property nor the fund ever passed into the hands of Emerson as trustee in bankruptcy in virtue alone of the adjudication. The practical effect, then, of the action taken by the present appellees in the court below was to assert priorities, indeed liens, against the fund. Plainly, the action was not to secure a judgment allowing a debt or claim within the meaning of clause 3, § 25a; and hence the motion to dismiss must depend upon the other ground offered in its support.

[2, 3] Section 24a invests the Circuit Courts of Appeals with "appellate jurisdiction of controversies arising in bankruptcy proceedings from the courts of bankruptcy from which they have appellate jurisdiction in other cases." The jurisdiction so given is not in terms affected by the amount involved. In re Rouse, Hazard & Co., 91 Fed. 96, 98, 33 C. C. A. 356 (C. C. A. 7). It is to be inferred from the record that the action taken by the appellees in the court below was, in practical intent and purpose, an intervention in bankruptcy proceedings which gave rise to a controversy within the meaning of section 24a. There were nine claimants asserting priorities, or, in effect, as we have seen, liens, against a particular fund which, we repeat, was not derived through direct operation of the adjudication in bankruptcy. Such action naturally invoked the equity jurisdiction of the court; and the court below, sitting in bankruptcy, ordered the fund to be applied in partial satisfaction of these admittedly earned labor claims. No formal pleadings, it is true, were presented by either side

to show the theory of the parties, either as respects recovery or defense. It is to be presumed that the appellees initiated their action by orally calling attention to the facts concerning services they had rendered to the bankrupt; for, as we have shown in the statement, an order was entered January 20, 1915, reciting that "it being made to appear to the court that residents" of the district "hold labor claims against the bankrupt herein, and that there is doubt as to whether or not said claims are a lien upon the property of said bankrupt," whereupon the special master was appointed to take testimony, as stated. The nature of this action is further shown by the report and findings of the special master, who appears to have treated the earnings as constituting liens upon the fund; and also by the exceptions reserved below and the assignments made here by the appellants, in which it is stated, among other things, that the title to the fund had passed directly from the state receiver to Emerson, as trustee in bankruptcy and not as ancillary receiver, and, consequently, that the fund was not within the jurisdiction of the court below, but was within that of the court of primary jurisdiction. The method thus adopted of introducing and conducting the controversy was certainly informal, to say the least, and yet the method discloses an assertion and denial of liens against the fund, also a dispute as to where the title to the fund as well as its control lay. The method further discloses an alignment of parties similar to that involved in a plenary action. Surely these features ought not to be ignored at the instance of any of the parties themselves. It has been aptly said that "the Bankruptcy Act is remedial and should be interpreted reasonably and according to the fair import of its terms, with a view to effect its objects and to promote justice" (Botts v. Hammond, 99 Fed. 916, 920, 40 C. C. A. 179 [C. C. A. 4]); and, in working out these ends, the bankruptcy courts have not indulged in technicalities wherever a liberal procedure was consistent with the substantial rights of the parties in interest; and one of the clear objects of the Bankruptcy Act is to secure speedy and economical, though just, adjudication of controversies arising in bankruptcy proceedings. These considerations lead us to believe that the action taken below in respect of these labor claims fairly involved a controversy under section 24a, and so justified the appeal. Rode & Horn v. Phipps, 195 Fed. 414, 418, 115 C. C. A. 316, and citations (C. C. A. 6); Bell v. Arledge, 192 Fed. 837, 839, 113 C. C. A. 161 (C. C. A. 5); In re Breyer Printing Co., 216 Fed. 878, 881, 133 C. C. A. 82 (C. C. A. 7); Southern Cotton Oil Co. v. Elliotte, 218 Fed. 567, 568, 134 C. C. A. 295 (C. C. A. 6); In re Martin, 201 Fed. 31, 33, tit. "Jurisdiction," to 37 (119 C. C. A. 363); s. c., sub nom. Globe Bank v. Martin, 236 U. S. 288, 295, 296, 35 Sup. Ct. 377, 59 L. Ed. 501; In re Hartzell, 209 Fed. 775, 776, 778, 126 C. C. A. 499 (C. C. A. 8); Houghton v. Burden, 228 U. S. 161, 164, 165, 33 Sup. Ct. 491, 57 L. Ed. 780. It hardly is necessary to say that in reaching this conclusion we do not here pass upon the merits of the action. The attempt has been to describe the action with a view of testing the challenge made of the remedy of appeal. We are not, however, unmindful of the remedy, as respects a proceeding in bankruptcy, given by section 24b to super-

intend and revise in matter of law, though it must be said that counsel do not even suggest that remedy as the proper one here. At first view it would seem that these labor claims presented questions of law which might well have been disposed of as a step in an ordinary "proceeding in bankruptcy," as distinguished from a "controversy arising in a bankruptcy proceeding" (In re Rouse, Hazard & Co., supra, 91 Fed. 99, 33 C. C. A. 356; In re Worcester County, 102 Fed. 808, 813, 814, 42 C. C. A. 637 [C. C. A. 1]; O'Dell v. Boyden, 150 Fed. 731, 732, 80 C. C. A. 397 [C. C. A. 6] 10 Ann. Cas. 239; Orinoco Iron Co. v. Metzel, 230 Fed. 40, 48, 144 C. C. A. 338 [C. C. A. 6]); but in reality the instant case is distinguishable from these decisions, and for the reasons that when the present proceeding in bankruptcy was commenced and the adjudication declared, the bankrupt, the Cataract Company, was not in possession of either the property or the fund derived therefrom, and the ancillary proceeding was found necessary in order to gain possession. We but repeat when we say that the fund thus reduced to possession came into the court below with priorities, indeed, liens, alleged to exist against it in favor of resident claimants, and so gave rise to a controversy within the meaning of section 24a. In re Breyer Printing Co., supra, 216 Fed. 881, 882, 133 C. C. A. 82. The motion to dismiss will be denied.

[4] Upon the merits of the case the appellants' counsel contend that the jurisdiction derived through the ancillary proceeding did not empower the court below to determine the rights of appellees in the fund recovered. The theory of this contention is that Emerson's selection as trustee operated to vacate his positions as receiver and ancillary receiver, and that the state court receiver did not pay over the fund until after Emerson's selection as trustee was made. Counsel, in effect, concede that if the fund had been paid over before such selection, the court below could have controlled and applied the fund at the suit of the resident claimants. Thus the issue is reducible to the circumstance that possession of the fund was not secured until after the trustee was chosen. It is to be remembered that while Emerson was first appointed by the court below as ancillary receiver for the Northern district of Ohio, "with all of the rights and powers to carry into force and effect the orders of the original court of jurisdiction," yet that this portion of the order was subsequently vacated, and Emerson reappointed as ancillary receiver, but invested only "with the right and power to carry into force and effect the orders of this court which may be entered hereafter"; and it was at the same time ordered that the ancillary receiver should report and account to the court below "for all property of said bankrupt coming into his possession" in such Northern district, and that he should "hold the same subject to the order of this court." We have seen that the fund was paid over by the state receiver under an order of the state court, and that this order contained a recital that it was made in pursuance of an order of the court below. It is admitted by appellees that the fund was paid by the state receiver after Emerson had been elected trustee; and in his report as ancillary receiver to the court below, March 26, 1915, Emerson stated that the fund

was paid to the "trustee in bankruptcy." Despite this, we have seen that the order of the state court, directing its receiver to pay over the fund, distinctly provided that it should be paid to "Robert Emerson, receiver and now trustee of the Cataract Rubber Company, bankrupt"; and, although the record fails to disclose the form of the receipt given to the state receiver, it is to be presumed, and it is so stated without denial by appellees' counsel, that the receipt conformed with the order of the state court.

Section 2 of the Bankruptcy Act (subdivision 20), as amended June 25, 1910, vests in the federal District Courts—

"ancillary jurisdiction over persons or property within their respective territorial limits in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy." 36 Stat. pt. 1, 839.

We cannot think that Emerson's selection as trustee operated to vacate his ancillary receivership, and to transfer the fund through him as trustee to the sole control of the court of primary jurisdiction. It is, of course, true, as counsel say, that section 70a of the Bankruptcy Act provides that the trustee shall be "vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt"; still reliance on this provision ignores the facts that the property from which the fund was derived was in possession of the state court receiver at the times of both the bankruptcy and the adjudication, and that admittedly the rights of the ancillary receiver and the trustee in bankruptcy in respect of the property could be determined only through the ancillary proceeding in question. The object of bestowing ancillary jurisdiction would naturally be to invest the tribunal, whose aid is once invoked, with power itself to control the agencies coming within its territorial jurisdiction, and likewise the property found and sought to be recovered therein on behalf of the bankrupt's estate. It would be an anomalous proceeding which would suffer an ancillary receiver or a trustee in bankruptcy at his option to withdraw property recovered through the aid of the ancillary tribunal, and regardless alike of the tribunal itself and resident suitors there appearing and claiming priorities or liens against the property. This would be to make the ancillary tribunal a mere instrument of the official instituting the action, since it would deny to the tribunal power to pass upon the rights of adverse claimants and even of a person found in possession of the property. Such a proceeding would hardly square with due process of law; it would savor rather of violence.

[5] It was held prior to the amendment of 1910 that the District Courts of the United States, sitting in bankruptcy, each possessed "ancillary jurisdiction to make orders and issue process in aid of proceedings pending and being administered in the District Court of another district." Babbit v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Elkus, Petitioner, 216 U. S. 115, 117, 30 Sup. Ct. 377, 54 L. Ed. 407. Ancillary jurisdiction, it is true, signifies power to aid primary jurisdiction. But the power in an ancillary tribunal to take possession of property at all is founded on the interest therein of the person or estate in whose right the

proceeding is maintained; and this interest cannot, in the nature of things, be ascertained without passing upon such adverse interests as may be claimed by others in the property. When, therefore, an ancillary tribunal takes possession, whether with or without opposition, such possession draws to that tribunal power, indeed, imposes a duty, to determine all questions of priorities and liens affecting the property. This applies with especial force to the rights of resident adverse claimants. Fidelity Trust Co. v. Gaskell, 195 Fed. 865, 873, 115 C. C. A. 527 (C. C. A. 8); In re Farrell, 201 Fed. 338, 339, 119 C. C. A. 576 (C. C. A. 6); Loeser v. Dallas, 192 Fed. 909, 911, 114 C. C. A. 349 (C. C. A. 3); In re Lipman (D. C.) 201 Fed. 169, 172; In re Rathfon Bros. (D. C.) 200 Fed. 108, 109. It results that the court below had complete control of Emerson in both of his capacities as respects this fund (Fidelity Trust Co. v. Gaskell, supra, 195 Fed. 874, 115 C. C. A. 527; Reynolds v. Stockton, 140 U. S. 254, 272, 11 Sup. Ct. 773, 35 L. Ed. 464.

[6] The final question is whether the claims of any of the appellees are recoverable under either section 11138 or section 8339 of the Ohio Gen. Code. The learned trial judge, in affirmance of the special master's ruling, based allowance of all the claims upon section 11138. The portion of that section so relied on provides:

"Each person who has performed labor as an operative in the service of the assignor, within twelve months preceding the assignment, shall be entitled to receive out of the trust funds, before the paying of other creditors, the full amount of wages due for such labor, not exceeding three hundred dollars." 5 Page and Adams Ann. O. G. C.

It was held that this provision operated to create a lien upon the fund in dispute, securing each labor claim in a sum not exceeding $300. This was upon the theory that the case is controlled by the ruling of this court in In re Laird, 109 Fed. 550, 48 C. C. A. 538, and the decision of the Supreme Court of Ohio in Machine Co. v. Supply Co., 68 Ohio St. 535, 67 N. E. 1055, 64 L. R. A. 845, 96 Am. St. Rep. 677. The foregoing statutory provision was not involved in the Laird Case. The provision there relied on in sustaining labor claims was the following portion of the present section 8339, Ohio Gen. Code, which at the time of the decision bore the number 3206a, Ohio Revised Statutes (In re Laird, 109 Fed. 554, 48 C. C. A. 542):

"In all cases when property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall first be paid out of the trust fund, in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust."

Several observations are to be made upon these two statutory provisions. The one of most obvious pertinence is the difference in time within which the services must have been rendered in order to come within the respective limitations there prescribed; the first being "twelve months preceding the assignment," and the other "three months prior to the time such assignee, receiver or trustee is

appointed." The services of each of the nine claimants here were rendered within this twelve months' limitation, but only four of the claimants distinctly appear to have performed any services within the three months' limitation, and such latter services were small in comparison with the whole. It is next to be observed of these statutes that the one first in part quoted belongs to the chapter regulating the administration and distribution of estates of insolvent debtors (5 Page & Adams Ann. O. G. C. pp. 431, 488), and that the other is part of the chapter which in distinct terms provides for liens, and, among others, for liens of "laborers and employés of any person," etc. (3 Page & Adams O. G. C. pp. 1081, 1103). Further, the first statute relates to "each person who has performed labor as an operative," and the second one to "laborers and employés" whose claims are "for labor performed"; and, while the claim of an "operative" may cover a period of 12 months, the amount of recovery is limited to $300, and although a claim "for labor performed" may cover a period of only 3 months, there is no restriction upon the amount of recovery.

In view of these marked differences between the two statutes, it is reasonably to be inferred that they are independent each of the other, and designed for the accomplishment of distinct objects; and such was the conclusion of this court in In re City Trust Co., 121 Fed. 706, 58 C. C. A. 126. That case presented the question whether the claims of "operatives" were, under either section 3206a (now section 8339) or section 6355 (now section 11138), or both, entitled to priority over certain prior and good-faith chattel mortgage liens. Moreover, a deed of assignment for the benefit of creditors had been made by the assignor previous to the adjudication in bankruptcy; and the court was accordingly called upon to determine whether, under either or both of these statutes, the operatives' claims were entitled to priority over the claims of the chattel mortgagees. This led to the consideration again of the Laird Case and also to its reaffirmance. The result was to deny the application of section 6355 (now section 11138) to estates held by receivers or trustees, and also to deny to laborers, who might fairly be classed as operatives, the benefit of both section 3206a and section 6355; the present Mr. Justice Day saying in the course of the opinion (121 Fed. 708, 58 C. C. A. 128):

"Section 6355 (now section 11138) is a part of the chapter regulating the administration of estates of insolvent debtors, and deals with the distribution of the fund in the hands of the assignee. It does not have to do with estates placed in the hands of receivers or trustees. * * *"

And again (121 Fed. 709, 58 C. C. A. 129):

"While we realize the general principle which gives to this kind of legislation a liberal construction, with a view to carrying out its beneficent purposes, we do not think it was the intention of the Legislature to give to laborers of this class the benefit of both sections 3206a and 6355. As we have said, the broad provisions of 3206a might include all classes of laborers; but in section 6355 the Legislature is dealing with a distinct class, fixing the right to preferential claims in cases of assignment."

The effect of this was to deny to an "operative" under present section 11138 the right to claim any benefit under old section 3206a,

in cases where an assignment has been made; and the judgment below was reversed for that reason. The present importance of that ruling will be seen in the fact that in the instant case the court below, in affirming the special master, found that the appellees were operatives within the meaning of section 11138, and also entitled to liens under that section upon the theory of the rule laid down in the Laird Case. This was to overlook the ruling in the City Trust Case that section 11138 applies only to cases of assignment, and not to cases of receivership. However, it was not decided in the City Trust Case that operatives, within the meaning of old section 6355, would not be entitled to prove their claims under old section 3206a, wherever it appears that the estate has been placed in the hands of a receiver instead of an assignee. This points to an important distinction which must be observed when considering both the City Trust Case and the Laird Case; the fact of the assignment which appeared in the former case was held to require disallowance of the claims of operatives under old section 3206a, while the presence of the receivership in the Laird Case was sufficient to justify allowance of the claims there involved under that section. True, no question arose in the latter case as to the character of the claims, that is, whether of operatives or only of ordinary laborers, though apparently they were of the latter class; but the point is clear, and it must be borne in mind, that the effect of these two decisions is to allow claims of operatives under old section 3206a, where the estates are not in the hands of an assignee, but are in the hands of a receiver, yet it is equally important to remember that allowance under old section 3206a must be subject to the limitation in point of time prescribed by that section.

It is, however, urged, and it was in effect so held below, that the decision in Machine Co. v. Supply Co., supra, 68 Ohio St. 535, 67 N. E. 1055, 64 L. R. A. 845, 96 Am. St. Rep. 677, decides that labor claimants like the present are entitled "to invoke the provision most favorable to themselves," that is, the provision of either of these Ohio laws. We do not so understand that decision. The sole question involved in the case was one of priority as between the claims of certain laborers and chattel mortgagees. The property of the mortgagor had been placed in the hands of receivers in the common pleas court of Allen county, Ohio, and after the property had been converted into money the rights of the parties were transferred to the fund so derived. The circuit court held that the amounts due on the laborers' claims should first be paid in full, and the remainder applied, in a way pointed out, to the payment of the mortgages. The judgment was reversed and the holders of the chattel mortgages were given priority. Plainly the question involved, and so the judgment, had no relation to a right, like that mentioned in the opinion, of labor claimants to select and recover under the statute "most favorable to themselves." The court was required, and only required to determine which of two classes of claimants—one class claiming for labor performed and the other for loans secured by chattel mortgages—should be subordinated to the other in the distribution of the fund; and nothing more than the determination of that issue is to be found in the syl-

labus. Under the Ohio rule the syllabus is controlling, "even though the expression of the judge" delivering the opinion "should be thought to indicate a state of mind favorable to the contention of counsel upon a question not before the court." Trust Co. v. Stich, 71 Ohio St. 459, 466, 467, 73 N. E. 520. As respects the third paragraph of the syllabus in the Machine Company Case, the term "trust fund" there referred to and defined clearly relates to the general estate of the debtor, and which, incumbrances being discharged, is applicable to the payment of labor claims, if there be any, according as such claims arise under the one or the other of the sections there mentioned, in preference to the claims of general creditors. This by no means holds that an "operative" has a choice of these statutes as respects the enforcement of his claim. The decision in that case, therefore, is not in conflict with the decision in the City Trust Case, certainly so far as anything here involved is concerned; and, in view of the latter decision, we hold that section 11138 has no application to the present case.

[7] It follows that if we treat the four appellees as "operatives," who rendered services within three months of the appointment of the receiver in the state court, they are, by reason of such receivership, entitled to allowance for those services, under section 8339 (old section 3206a). Further, if such appellees were not "operatives" within the meaning of section 11138, but were engaged as ordinary laborers, in the three months' period mentioned, still the allowance may be based on the same section; i. e., 8339. We are disposed to interpret the view entertained by the learned trial judge that appellees were operatives, within the meaning of section 11138, to have been intended rather as a conclusion of law than a finding of fact. As we understand the evidence, these four appellees were in that period engaged in a substantial way in the performance of manual labor. True, Emery was employed as "consulting engineer and rubber expert," and was later operating machinery, Castor was employed as superintendent, and Bogner as machinist; but the remaining appellee was the night watchman, Davenport. It was shown, however, and so found below:

"The plant was a very small one, employing at least in its later stages only nine men in all, and the testimony shows that Emery and Castor, necessarily having little to do in the way of superintendence, and the company being in financial difficulty, devoted themselves, in large part, to manual labor contributing to the manufacture of rubber tires."

Indeed, we think it is fairly to be inferred that so far as any services were rendered by Emery, Castor, and Bogner in the last three months, their services consisted mainly in the performance of manual labor and negligibly in the discharge of their earlier duties. It is this feature of the evidence which we think warrants the belief that the titles borne by these three appellees signify but little in the last stages of the business, and consequently that their claims, as well as the claim of the watchman, may rightfully be classified and treated as falling within the purview of section 8339 (old section 3206a). The wages of Emery and Castor were, it must be conceded, in excess of what would ordinarily be allowed to persons for such work as

they were latterly required to perform, and yet for aught that appears their employer was satisfied with the wages and they with the labor. See allowance of Winn's claim in Blessing v. Blanchard, 223 Fed. 35, 37, 138 C. C. A. 399 (C. C. A. 9) Ann. Cas. 1916B, 341. In view of these circumstances and of the obvious need of bringing this litigation to a close, we shall treat these four claims as falling within the rule of the decision in the Laird Case. It is true, as counsel show, that that decision has not received approval in some of the federal circuits, and so it is contended that the case should be reconsidered and overruled. This contention fails to observe the fact that the decision has been recently cited, and with apparent approval, in two decisions of the Supreme Court (Henderson v. Mayer, 224 U. S. 631, 637, 32 Sup. Ct. 699, 56 L. Ed. 1233; Globe Bank v. Martin, 236 U. S. 288, 301, 35 Sup. Ct. 377, 59 L. Ed. 501).

[8] The complaint made of the Laird decision is in substance that it fails to give effect to 64b (4) of the Bankruptcy Act; but the limitation there imposed upon the allowance of claims for wages is the same in point of time as that fixed by the state statute which is here treated as applicable. It so happens, moreover, that the earnings of each of the four employés within the last three months were less than the limitation in amount fixed by 64b (4); and only two days elapsed between the appointment of the receiver in the common pleas court of Wayne county, Ohio, and the commencement of the bankruptcy proceeding in the District Court of Rhode Island. This lapse of time is so slight as not materially to affect the amounts of recovery, whether the state statute or 64b is to be applied. If, then, the court were inclined to reconsider the decision in the Laird Case, such an attempt would not be justified here.

The decree must be reversed, and the cause remanded, with direction to enter a modified decree providing for payment out of the fund here in issue of such portions of the claims of the four appellees, viz. Emery, Castor, Bogner, and Davenport, as represent the services rendered by them within the three months' period prescribed by section 8339, Ohio Gen. Code, and likewise respecting the claims of Miller, tire builder, and Young, day watchman, appellees, in case they performed services within that period. The parties on neither side will recover costs of this court against the others; but the costs paid by appellants to the clerk of this court, and, since the expense of preparing and printing record and printing briefs would be largely the same if only the four appellees named had recovered, appellants' expense of preparing and printing transcript of record and briefs, as well as appellees' expense of printing brief, shall also be paid out of such fund.